IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 3:16-cr-50-DPJ-FKB |
| | ) |
| CARL REDDIX | ) |

**MOTION TO INTERVENE TO QUASH SUBPOENAS ISSUED BY DEFENDANT**

Wexford Health Sources, Inc. ("Wexford") seeks to intervene so that it may object to the subpoenas issued to the Mississippi Department of Corrections ("MDOC") that would invade Wexford's commercially sensitive and trade secret information, and moves under Rule 17(c)(2) to quash those subpoenas. The relevant subpoenas are attached as Exhibit A.

On March 8, 2017, Mr. Reddix's counsel served subpoenas on MDOC requiring MDOC to produce detailed financial information regarding its contracts with Wexford. The subpoenas are broadly-worded, but it is apparent that the documents the subpoenas encompass include a great deal of financial data, including Wexford's revenues, cost structures, and profit margins. For example, the subpoenas seek MDOC's "payment history" to Wexford; "proposals" submitted by Wexford to MDOC; MDOC's evaluation of Wexford's proposals; and complete contracts between MDOC and Wexford. Ex. A.

Wexford is a privately owned company, operating in the competitive correctional healthcare-services industry. Accordingly, its financial data, and especially its revenues, cost structures, and profit margins, are highly confidential. Because the requested information is commercially sensitive, public revelation of the information would cause significant harm to Wexford's business interests. Wexford submits this motion as an intervenor with MDOC's knowledge, and Wexford will serve MDOC a copy of the motion. MDOC, as the target of the

subpoenas, is obligated to protect the confidential information of those with whom it contracts, including Wexford.

In the meantime, Counsel for Wexford is negotiating with Counsel for Mr. Reddix to (a) narrow the scope of the subpoena to more specifically describe the documents sought; and (b) negotiate a protective order to govern the appropriate use of documents and to avoid publicizing confidential information that could be misused by one of Wexford's competitors. Until that negotiation is complete, MDOC should not produce Wexford documents.

## ARGUMENT

**I.      MDOC cannot produce confidential Wexford financial data without an appropriate protective order in place.**

"[T]he court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). The potential of publicizing the sensitive and private information of third parties is an accepted reason to quash a Rule 17 subpoena. *E.g.*, *United States v. Eisenhart*, 43 F. App'x 500, 505 (3d Cir. 2002); *United States v. Dale*, 155 F.R.D. 149, 151 (S.D. Miss. 1994) ("The Court, in making the determination whether compliance with the subpoena would be 'unreasonable or oppressive' . . . must also consider . . . privacy interests.") (internal citation omitted).

Wexford is a privately held corporation based in Pittsburgh, Pennsylvania. It is a nationally recognized leader in correctional healthcare services, providing clients (typically state correctional agencies like MDOC) with a full range of medical, dental, behavioral health, pharmacy, utilization management, provider contracting, claims processing, and quality management services. Wexford has successfully delivered healthcare services to more than 270 correctional and other institutions across the country.

As a privately held company, Wexford's pricing, revenues, cost structures, and profit margins are confidential and proprietary. In addition to revealing its financial results, Wexford's financial records provide insight into the methods, strategies, staffing, technical approach, service models, quality control, and pricing that it has devoted time and resources to developing. Moreover, the information contained in Wexford's financial records is the result of proprietary systems and management techniques developed by Wexford in accordance with its commitment to providing and improving inmate healthcare services. In short, Wexford's financial records reveal how Wexford is able to successfully deliver quality services at a cost effective level. For these reasons, Wexford's financial records are proprietary, confidential, and trade-secret in nature.

It follows that keeping its financial records confidential is key to Wexford's ability to remain competitive. For example, for nine years (2006-2015) Wexford had a contract with MDOC to provide comprehensive healthcare services at the Rankin facility, which has about 15,000 inmates. The contract was subject to a confidential competitive bidding process, and Wexford obtained the contract because it was the lowest qualified bidder. Wexford continues to hold and bid on other similar contracts in other states, often bidding against the same competitors. Thus, if Wexford's cost structure and profit margins were made public, its competitors would be able to use this information to improve their competitive position relative to Wexford on future inmate healthcare services procurements, whether in Mississippi or in other states, by using Wexford's own numbers against it. There is nothing more prejudicial to a private company than its competitors knowing its profit margins and bidding strategies.

The protection of such information is precisely the type of compelling interest that justifies sealing a judicial proceeding, sealing materials, and issuing a protective order. *See*

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (recognizing that sealing judicial records may be appropriate for "sources of business information that might harm a litigant's competitive standing"); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (explaining that judicial proceedings may properly be closed for "the protection of a party's interest in confidential commercial information, such as a trade secret, where there is a sufficient threat of irreparable harm"); *Stamicarbon, N.V. v. American Cyanamid Co.*, 506 F.2d 532, 540–41 (2d Cir. 1974) (allowing limited in camera proceedings during contempt trial to protect trade secrets).

In this regard, it is noteworthy that when Wexford and other companies submit confidential financial information to state correctional agencies in connection with bids on contracts, states routinely provide that such information is protected from public disclosure under state open records laws. That was the case with Wexford's bidding on the MDOC contract, as the Chancery Court of Hinds County, Mississippi, has previously held. *See* Protective Order Preventing Disclosure of Certain Documents & Information Contained in Documents Filed With the State of Miss., Dep't of Corrections, in *Wexford Health Sources, Inc. v. State* (No. G-2015-944 T/1), attached as Ex. B; Order & Opinion, in *Wexford Health Sources, Inc. v. State* (No. G-2006-992), attached as Ex. C.

Wexford will consent to MDOC's compliance with a subpoena, as long as that compliance does not open the possibility of Wexford's commercially sensitive information leaking into the public domain and being taken by one of Wexford's competitors. Counsel for Wexford and for Mr. Reddix are negotiating the terms of a protective order that will prevent that from happening. Absent a protective order, the unfettered production and use of Wexford's confidential information is simply too risky and would violate the confidentiality attendant with

Wexford's relationship with MDOC.[1]

## II. The subpoenas are too unspecific.

A Rule 17 subpoena is not a discovery device, and cannot be used to conduct a fishing expedition. *United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992). Because a Rule 17 subpoena is not a discovery device, it cannot ask for broad categories of documents, in the way that a civil subpoena might. Rather, a Rule 17 subpoena must target particular documents and describe them with specificity. *See United States v. Richardson*, 607 F.3d 357, 368-69 (4th Cir. 2010); *accord Arditti*, 955 F.2d at 345-46.

Here, the subpoenas only identify a small number of specific documents and, for the most part, describe documents using broadly-worded categories. Ex. A. Counsel for Wexford and for Mr. Reddix are working to narrow these descriptions, for Wexford to then produce documents that correspond with more specific descriptions. For now, the subpoenas are more like the kind of subpoenas seen in civil discovery. As precedent forecloses using a Rule 17 subpoena as a discovery device, the subpoenas—as drafted—are objectionable.

## CONCLUSION

The Court should quash the subpoenas attached as Exhibit A. Counsel for Wexford and for Mr. Reddix can negotiate a document production that avoids the objectionable features of those subpoenas and ensures appropriate protection, but MDOC should not comply with the subpoenas as-drafted.

/s/ *Stephen L. Thomas*
Stephen L. Thomas (MBN 8309)
Simon T. Bailey (MBN 103925)

---

[1] With or without a protective order in place, Wexford stands ready to make the responsive documents available to the Court for an *in camera* inspection. From any such inspection, the Court will see that the documents contain the sort of financial data that could easily be misused by a competitor to gain an advantage.

>Bradley Arant Boult Cummings LLP
>One Jackson Place
>188 East Capitol Street, Suite 400
>P.O. Box 1789
>Jackson, MS 39215-1789
>Telephone: (601) 948-8000
>Facsimile: (601) 948-3000
>sthomas@bradley.com
>sbailey@bradley.com
>
>*Counsel for Interested Party - Wexford Health Sources, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the appropriate counsel in this case.

THIS the 20th day of March, 2017.

>s/ *Stephen L. Thomas*
>Stephen L. Thomas

## CERTIFICATE OF CONFERENCE

I certify I have conferred in good faith with counsel for Mr. Reddix regarding this Motion. That conferral is ongoing, and I anticipate that this matter may be resolved without the Court's intervention.

THIS the 20th day of March, 2017.

>s/ *Stephen L. Thomas*
>Stephen L. Thomas