## IN THE CHANCERY COURT OF HINDS COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

ATTEST A TRUE COPY
FILED

**WEXFORD HEALTH SOURCES, INC.**                                      **PLAINTIFF**

NOV 2 8 2006

**V.**                                EDDIE JEAN CARR CHANCERY CLERK   CAUSE NO. G-2006-992 O/3

BY _____ D.C.

**MISSISSIPPI DEPARTMENT OF CORRECTIONS**                            **DEFENDANT**

### ORDER AND OPINION OF THE COURT

THIS MATTER is before this Court on the Complaint for Injunctive and Other Relief and Motion for Protective Order filed by Plaintiff Wexford Health Sources, Inc. Having heard testimony on the matter and all premises considered, the Court finds that Plaintiff's Complaint for Injunctive and Other Relief and the Motion for Protective Order are well taken and the relief requested shall be GRANTED. The Court further finds as follows:

### Statement of Facts and Procedural History

Plaintiff Wexford Health Sources, Inc. (hereinafter "Wexford") is a foreign corporation licensed to do business in the State of Mississippi. Wexford provides comprehensive health care services to the prison and jail industry and other governmental agencies.

In 2006, The Mississippi Department of Corrections (herein "MDOC"), solicited bids for a contract to provide medical, mental health, and pharmacy services to inmates housed at Mississippi State Penitentiary at Parchman, the Central Mississippi Correctional Facility and the South Mississippi Correctional Facility pursuant to Request for Proposal 06-010 ("RFP 06-010"). Wexford and Prison Health Services, Inc. ("Prison Services") submitted bid proposals in response to RFP 06-010. Wexford submitted its proposal to MDOC which included the following information:

   a.   Wexford's Audited Financial Statements;

EXHIBIT C

b.  Wexford's Infection Control Manual;
c.  Wexford's Network Selections, Credentialing and Quality Assurance Information;
d.  Wexford's Dialysis Provider Payment and Contracts Information;
e.  Wexford's Utilization Management Information;
f.  Wexford's Reappointment Policy for Employees and Independent Contractors;
g.  Wexford's Policy for Peer Review Activities;
h.  Wexford's Disciplinary Process and Terminations and Standards for Conduct;
i.  Wexford's Key Measures of Performance;
j.  Wexford's Certificate of Insurance;
k.  Wexford's Telemedicine Program;
l.  Wexford's Electronic Medical Record Program;
m.  Wexford's Medical Care and Claims Management Programs;
n.  Wexford's references;
o.  Wexford's client list;
p.  Wexford's Employee Turnover Information;
q.  Wexford's Proposal Exception Summary;
r.  Wexford's Terms of Payment for Medical Cost;
s.  Wexford's Cost Information; and
t.  Wexford's Subcontractor Information

Wexford submitted its Final and Best Offer to MDOC which contained information regarding Wexford's analysts, proposed programs and price structures based on Wexford's analysis of MDOC's "unique characteristics and requirements." Following its final review, MDOC awarded the Health Services Contract to Wexford. The contract between Wexford and MDOC included an attachment of Exhibit E which provides the "standard hourly rates" or "costs"for Wexford's staff and personnel. On or about April 10, 2006, Prison Services requested the following documents from MDOC:

a.  Wexford's technical proposals for medical, mental health and pharmacy programs;
b.  Wexford's pricing/cost proposals;
c.  Wexford's responses to department letters and Best and Final Offers;
d.  Wexford's Final Approved Contract; and
e.  MDOC's evaluation documents; scoring sheets, written comments and other materials related to MDOC's Evaluation Committee's review and ranking for all purposes.

MDOC notified Wexford of Prison Services' request for documents and advised Wexford that it would release the information, materials and documents to Prison Services pursuant to the Act, unless Wexford obtained a court order protecting the information. On May 31, 2006, Wexford filed a Complaint for Injunctive and Other Relief alleging that the documents requested by Prison Services were "trade secrets" and/or "confidential information."

On June 6, 2006, Prison Services filed its Motion to Intervene and Complaint in Intervention. On September 18, 2006, Wexford filed its Answer and Defenses to Prison Services' Complaint in Intervention and a Motion for Protective Order. On September 18, 2006, this Court entered an Order granting Prison Services' Motion to Intervene. Prison Services filed its Motion for Summary Judgment on September 19, 2006. On September 25, 2006, Prison Services filed its Response to Motion for Protective Order and its Answer to Complaint. The Mississippi Department of Corrections filed its Answer to Wexford's Complaint and Prison Services' Complaint in Intervention on September 25, 2006. On September 28, 2006, Wexford filed its Response to the Motion for Summary Judgment and a Motion to Strike the exhibits attached to the Motion. On October 2, 2006, Wexford filed its Motion to Amend Complaint.

The trial of this matter was held on October 4, 2006. At trial the parties agreed to prohibit the disclosure by MDOC of those portions of Wexford's Proposal containing the following information:

a.  Wexford's Audited Financial Statements;
b.  Wexford's Infection Control Manual;
c.  Wexford's Network Selections, Credentialing and Quality Assurance Information;
d.  Wexford's Dialysis Provider Payment and Contracts Information;
e.  Wexford's Utilization Management Information;
f.  Wexford's Reappointment Policy for Employees and Independent Contractors;
g.  Wexford's Policy for Peer Review Activities;

3

h.       Wexford's Disciplinary Process and Terminations and Standards for Conduct;
i.        Wexford's Key Measures of Performance;
j.        Wexford's Certificate of Insurance;
k.       Wexford's Telemedicine Program;
l.        Wexford's Electronic Medical Record Program;
m.      Wexford's Medical Care and Claims Management Programs;

The parties also agreed that MDOC could release a copy of MDOC's scoring summary and a copy of the Contract with the exception of Exhibit E which provides the "standard hourly rates" or "costs" for Wexford's staff and personnel.

During trial, Bobby King ("Mr. King"), Wexford's Manager for Mississippi, testified that Wexford's client list as contained in its Proposal was confidential commercial information. Mr. King further testified that Wexford's client list could only be viewed by members of the executive hierarchy if it was disclosed. Wexford's business competitors could use the list to unfairly compete with Wexford. Mr. King also stated that the release of Wexford's client list could result in the dissemination of bad information about Wexford and competitors could use the information to steal Wexford's clients. Mr. King also testified that information regarding Wexford's employee turnover rates and information could be used by competitors to try and dissuade employees from working for Wexford. Mr. King opined that Wexford's subcontractor information was confidential and the release of its subcontractor information could result in competitors obtaining a better price and ultimately stealing Wexford's subcontractors. During his testimony, Mr. King admitted that he had no personal knowledge of competitors using any deceptive tactics to lure any of Wexford's employees or stealing away of Wexford's subcontractors.

Mr. King also testified that the Terms of Payment for Medical Costs as contained in Exhibit E which includes "standard hourly rates" or "costs" for Wexford's staff and personnel is

4

confidential.  Mr. King stated that the release of medical cost information would be detrimental to Wexford's business because competitors could determine how much Wexford pays for the medical costs that are included in Wexford's business plan.  Mr. King also indicated that the release of Wexford's Best and Final Offer constituted confidential and proprietary information which should not be disclosed.  Mr. King further stated the release of the Best and Final Offer of Wexford as submitted in its Proposal to MDOC would allow competitors to unfairly compete with Wexford.

### Legal Analysis

The Mississippi Public Records Act provides that "public records shall be available for inspection by any person unless otherwise provided by this chapter."  Miss. Code Ann. § 25-61-2.  The Public Records Act's broad coverage requires that "any doubts concerning disclosure should be resolved in favor of disclosure." *Mississippi Dept. of Wildlife, Fisheries and Parks v. Mississippi Wildlife Enforcement Officers Association*, 740 So.2d 925, 936 (Miss. 1999).  Accordingly, allowing access to public records is a duty of the public bodies of Mississippi. *Harrison County Development Commission v. Kinney*, 920 So.2d 497, 502 (Miss. Ct. App. 2006).

Wexford asserts that the information sought by Prison Services is confidential and proprietary.  Bobby King, Wexford's Manager for Mississippi, testified that Wexford's client list, subcontractor list, employee turnover rate information, Proposal Exception Summary, and medical cost information contained in Exhibit E was confidential information.  Mr. King further testified that the release of this information would be detrimental to Wexford's business because competitors could determine Wexford's clients, subcontractors, and information regarding employees that are included in Wexford's business plan.

Prison Services contends that the requested documents are not confidential and are subject

5

to disclosure.  Prison Services also asserts that Wexford's reasons for failing to disclose the

requested documents are unavailing.  Prison Services further alleges that Mr. King's testimony

constitutes lay opinion because it was not based on his personal knowledge.

Miss. Code Ann. § 79-23-1 provides in pertinent part,

> (1) Commercial and financial information of a proprietary nature
> required to be submitted to a public body, as defined by paragraph (a)
> of Section 25-61-3, by a firm, business, partnership, association,
> corporation, individual or other like entity, shall be exempt from the
> provisions of the Mississippi Public Records Act of 1983; provided,
> however, that nothing herein shall be construed to deny access to such
> information submitted to a regulatory agency by a public utility that
> is related to the establishment of, or changes in, rates regulated by
> such agency.
> (2) Nothing in this section shall be construed to deny a public utility
> the right to protect trade secrets or confidential commercial or
> financial information, as provided in subsection (1) of Section 25-61-
> 9.

At trial the parties agreed to prohibit the disclosure by MDOC of the those portions of

Wexford's Proposal containing the following information:

a.   Wexford's Audited Financial Statements;
b.   Wexford's Infection Control Manual;
c.   Wexford's Network Selections, Credentialing and Quality Assurance Information;
d.   Wexford's Dialysis Provider Payment and Contracts Information;
e.   Wexford's Utilization Management Information;
f.   Wexford's Reappointment Policy for Employees and Independent Contractors;
g.   Wexford's Policy for Peer Review Activities;
h.   Wexford's Disciplinary Process and Terminations and Standards for Conduct;
i.   Wexford's Key Measures of Performance;
j.   Wexford's Certificate of Insurance;
k.   Wexford's Telemedicine Program;
l.   Wexford's Electronic Medical Record Program;
m.   Wexford's Medical Care and Claims Management Programs;

The parties also agreed that MDOC could release a copy of MDOC's scoring summary and a copy

of the Contract with the exception of Exhibit E which provides the "standard hourly rates" or "costs"

for Wexford's staff and personnel.  Prison Services asserts that the following items are also subject

6

to disclosure under the public records act:

- *Wexford's references;*

- *Wexford's client list;*

- *Wexford's turnover statistics;*

- *Proposal Exception Summary;*

- *Terms of Payment for Medical Cost;*

- *Section 14 Cost Information;*

- *Subcontractor information; and*

- *Wexford's best and final offer*

Miss. Code Ann. § 25-61-9 provides in pertinent part,

> (1) Records furnished to public bodies by third parties which contain trade secrets or confidential commercial or financial information shall not be subject to inspection, examination, copying or reproduction under this chapter until notice to said third parties has been given, but such records shall be released within a reasonable period of time unless the said third parties shall have obtained a court order protecting such records as confidential.

> (2) If any public record which is held to be exempt from disclosure pursuant to this chapter contains material which is not exempt pursuant to this chapter, the public body shall separate the exempt material and make the nonexempt material available for examination and/or copying as provided for in this chapter.

Prison Services relies on the March 7, 1989, Attorney General Opinion which stated that bid proposals which have been publicly opened are public records and the public has a right of access to these records subject to the limitations set forth in Section 25-61-9.

In *Caldwell & Gregory, Inc . v. University of Mississippi,* the Court held that business plans, business references, customer lists, marketing plans, and similar documents are protected under Mississippi Public Records Act, even if they would not traditionally be considered a trade secret. *Caldwell & Gregory, Inc . v. University of Mississippi,* 716 So.2d 1120, 1123 (Miss. Ct. App. 1998).

7

The Mississippi Court of Appeals has determined that where an unsuccessful bidder for a public contract seeks to discover the successful bidder's proposal the trial court should review "each aspect of the proposal . . . [and reach] a conclusion . . . as to whether that material, in the common and ordinary accepted meaning of the terms, contains 'confidential commercial or financial information'– a much broader field of inquiry than whether the material meets the statutory definition of a 'trade secret.'" *Id.* "Only that information that does not legitimately meet this much broader "confidentiality" test may then be released to . . . others for inspection and copying in accordance with the provisions of Section 25-61-9(2)."

This Court has conducted its own *in camera* inspection of Wexford's proposal documents. Included in Wexford's proposal is a list of business references with a mailing address, a contact person, and telephone number for each reference. It is evident that this list is, in fact, a compilation of those organizations with whom Wexford has done or is doing business. The plan is accompanied by photographs and case histories of the success of similar undertakings by the company at other locations. Wexford's Proposal also includes a client list with mailing addresses and contact information. Wexford's Proposal also entailed its Proposal Exception Summary and the Method of Payment used with its vendors. The Cost Information Section of Wexford's bid proposal contains information regarding the structure of Wexford's Price Proposals and Pricing Methodology which is included in its business plan. Wexford's Best and Final Offer that was submitted provided Wexford's single capitated rates for per inmate per day and other information used in structuring a plan tailored to MDOC's unique characteristics and requirements.

In *Caldwell & Gregory*, the Mississippi Court of Appeals reasoned,

> A business that develops marketing and business plans to compete effectively in the commercial world is entitled to consider the fruits of such effort confidential. Thus, the business should be able to reasonably resist disclosure of such information even if it is not so unique as to rise to the high level of being a trade secret. The fact that, in the course of seeking a business arrangement with a public

8

agency, the business is willing to share that sort of confidential information with the agency itself (from whom it can reasonably expect no competition) in the hope of securing a business relation with the public body does not mean, necessarily, that the information ought to fall into the hands of the general public. *Caldwell & Gregory* at 1122-1123.

After conducting an *in camera* inspection of Wexford's documents, the Court finds that the following documents are confidential information and not subject to disclosure to Prison Services under the Mississippi Public Records Act:

- *Wexford's references;*
- *Wexford's client list;*
- *Wexford's turnover statistics;*
- *Proposal Exception Summary;*
- *Terms of Payment for Medical Cost;*
- *Section 14 Cost Information;*
- *Subcontractor information; and*
- *Wexford's best and final offer*

The disclosure of such information to Wexford's competitors could expose Wexford to unfair competition in the market. The Court relies on the reasoning set forth in *Caldwell & Gregory* which states "A conclusion that all unsuccessful competitors for a public agency ought, as a matter of law, to be entitled to a copy of the successful entity's proposal is a matter for legislative, and not judicial action." *Caldwell & Gregory* at 1123.

Accordingly, Wexford's Complaint for Injunctive and Other Relief and Motion for Protective Order are granted.

9

## Conclusion

For the foregoing reasons, Wexford's Complaint for Injunctive and Other Relief and Motion

for Protective Order filed by Plaintiff Wexford Health Sources, Inc shall be GRANTED.

SO ORDERED and ADJUDGED this the 28th day of November, 2006.

_____
DENISE OWENS, CHANCELLOR

10