IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 3:16-cr-50-DPJ-FKB |
| | ) |
| CARL REDDIX | ) |

### CENTURION OF MISSISSIPPI, LLC'S MOTION TO INTERVENE
### TO QUASH SUBPOENAS ISSUED BY DEFENDANT CARL REDDIX

Centurion of Mississippi, LLC ("Centurion") moves to intervene to quash the subpoenas (Doc. 26) issued by Defendant Carl Reddix ("Reddix") to the Mississippi Department of Corrections ("MDOC") to the extent those subpoenas seek Centurion's confidential business and proprietary information. The requests for Centurion's confidential materials—all of which were provided to MDOC in a bid process that occurred after the alleged criminal conduct by Reddix was completed—are irrelevant to this proceeding and, if produced, would expose Centurion's highly sensitive commercial and proprietary information.

Accordingly, Centurion moves under Rule 17(c)(2) of the Federal Rules of Criminal Procedure to quash Reddix's subpoenas. Alternatively, Centurion requests that the Court enter a protective order to limit dissemination of the highly sensitive information sought by the subpoenas by limiting their disclosure to counsel and court personnel in this criminal proceeding.

### BACKGROUND

**I.   Reddix is indicted for criminal acts occurring from 2012 until 2014 in combination with then MDOC Commissioner Christopher Epps.**

A grand jury indictment was entered in this matter on July 13, 2016 against Defendant Carl Reddix ("Reddix"). Doc. 3. The indictment charged that Reddix, as one of the owners of Health Assurance, LLC (which was then under contract with the State of Mississippi to provide healthcare

1

services to inmates at several MDOC facilities) "knowingly and intentionally combine[d], conspire[d], confederate[d], and agree[d] with Christopher B. Epps, to commit one or more offenses" including "to devise and intend to devise a scheme and artifice to defraud the Mississippi Department of Corrections and the State of Mississippi and its citizens of their intangible right to Christopher B Epps's honest services, through bribes and kickbacks, by use of interstate wire transmissions in violation of Sections 1343 and 1346, Title 18 United States Code" from 2012 until 2014. *Id.* at ¶¶ 3, 9.

Former MDOC Commissioner Christopher Epps was indicted in November 2014 for related criminal conduct.

On March 8, 2017, Reddix served nine subpoenas on MDOC. Doc. 26. Relevant to Centurion's motion, Reddix seeks to compel MDOC to produce the following:

1. "all vendor proposals to provide medical services at any Mississippi Department of Corrections Facility from 2010 until the present" (*id.* at 9);

2. "all Requests for Proposals to provide medical services at any Mississippi Department of Corrections facility from 2010 through 2016, all vendors['] responses, all rating sheets completed by the RFP committees, and the names of all individuals who served on the committees that reviewed and selected the medical providers who responded to the Requests for Proposals" (*id.* at 6); and

3. "all contracts with . . . Centurion . . . from 2010 to the present . . ." (*id.* at 7).

MDOC provided those subpoenas to Centurion and advised that Centurion should appear and make any objections to the subpoenas in this Court.

## II. Centurion participated in a competitive bid process and contracted with MDOC in 2015 and 2016, only after Commissioner Epps had left MDOC.

Following Commissioner Epps's indictment in November 2014, MDOC reviewed all of its contracts and decided to rebid its contracts for correctional healthcare using the State of Mississippi's standard public bid and contracting procedures. Subsequently, Centurion responded

to two requests for proposals ("RFPs") to provide correctional healthcare services to Mississippi's prison population, both of which RFPs were issued by MDCO only after Commissioner Epps had resigned and was no longer involved in selecting contractors for the agency—RFP No. 15-030 (advertised January 23, 2015) and RFP No. 16-009 (advertised on December 11, 2015).

Centurion did not enter any contracts with MDOC until 2015 and 2016—after Commissioner Epps had resigned and left MDOC. Redacted versions of those two contracts are publicly available online at Transparency Mississippi (http://www.transparency.mississippi.gov).

As a condition of participating in MDOC's competitive bid process in 2015 and 2016, Centurion was required to include in its proposal to MDOC a significant amount of its proprietary and confidential information. This information includes not only Centurion's bid amount, but key details and assumptions underlying Centurion's bid, such as the proposed medical staffing levels and patterns and a detailed explanation for these staffing proposals, anticipated costs under the contract, management and administrative fees to be paid under the contract, the audited financial statements for one its privately-held parent companies, and proprietary clinical practice assessment tools. If this confidential information is disclosed to the public and competitor companies, Centurion would be at a competitive disadvantage when bidding or contracting to provide correctional healthcare services in Mississippi and elsewhere.

That is why two other courts have either prohibited MDOC from disclosing any of these sensitive materials or carefully limited their disclosure to attorneys and court personnel only. First, in response to a public records request for the very same materials, the Hinds County Chancery Court entered an order *prohibiting* the disclosure of any such confidential information. *See* Exhibit A (Preliminary Protective Order (Doc. 3), entered Feb. 3, 2016 in *Centurion of Mississippi, LLC v. Mississippi Department of Corrections*, No. 25CH1:16-cv-000010 in the Chancery Court of

3

Hinds County, Mississippi).  Second, in an unrelated civil proceeding (a prisoner class action against MDOC), this Court has entered a protective order that allows Centurion to designate these very same bid materials as "Highly Confidential – Attorneys' Eyes Only" in order to strictly limit their dissemination.  *See* Exhibit B (Amended Stipulated Protective Order (Doc. 373), entered Feb. 2, 2017 in *Jermaine Dockery v. Marshall Fisher*, No. 3:13-cv-00326-WHB-JCG in the U.S. District Court for the Southern District of Mississippi).  The *Dockery* Court, with the agreement of all counsel and parties, imposed this highly-confidential designation to ensure that Centurion's confidential business information would not be released to competitors—including another private vendor involved in that proceeding.

## ARGUMENT

Reddix is not automatically entitled to receive and review whatever information he desires from MDOC's vendors, like Centurion, no matter how sensitive the material or far-removed from the issues presented in his criminal proceeding.  On the contrary, this Court is empowered to prohibit the disclosure of Centurion's sensitive commercial information or, at the very least, carefully limit its dissemination to attorneys and court personnel.  The Court should exercise its power to protect Centurion's private information for two reasons.

First, the highly-sensitive Centurion materials sought by Reddix are not relevant to this criminal action and ordering their production would be unreasonable given the likelihood that they will undermine Centurion's advantage in the competitive industry of correctional healthcare.  The subpoenas seek documents that post-date the criminal actions alleged against Reddix and Epps, and therefore can serve no purpose in assessing Reddix's guilt or innocence or determining a proper sentence for Reddix.  Contrasted against their insignificance to Reddix, the release of these highly-sensitive materials creates a significant risk to Centurion's business interests.  Requiring

4

MDOC to produce the requested materials would violate Centurion's interests in maintaining the utmost privacy protections afforded such materials, an interest that is protected by Rule 17(c)'s "unreasonable or oppressive" standard. Accordingly, Reddix's requests should be quashed to the extent they seek documents about Centurion.

Alternatively, and only if the Court finds that the subpoena requests are reasonable and relevant to the indictment and criminal proceeding against Reddix, the Court should enter a highly-confidential protective order to ensure (1) that Centurion's documents are produced only in redacted form, and (2) that the dissemination of these materials is limited to attorneys and Court personnel only. Disclosure of Centurion's commercial data and bid proposal documents beyond this limited group could cause significant harm to Centurion's business interests.

**I.      Legal Standards:  Under Rule 17(c), Reddix must demonstrate that the subpoenas are both reasonable and seek information relevant to his criminal proceeding.**

Federal Rule of Criminal Procedure 17(c) provides that a subpoena may be issued to command a person to produce designated documents. Fed. R. Crim. P. 17(c). Rule 17(c) also provides that the Court should quash or modify a criminal subpoena "if compliance would be unreasonable or oppressive." *Id.*

The Court applies a four-part test that the subpoenaing party must satisfy to survive a motion to quash a Rule 17(c) subpoena. The subpoenaing party must show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699-700 (1974); *see also United States v. Arditti,* 955 F.2d 331, 345 (5th Cir. 1992) (citing *Nixon*,

5

418 U.S. at 700) (A party seeking a Rule 17 subpoena "must show that: (1) the subpoenaed document is relevant, (2) it is admissible, and (3) it has been requested with adequate specificity."); *United States v. Sinha*, 2014 WL 12665157, at *2 (S.D. Miss. Nov. 24, 2014) (quoting *Nixon*, 418 U.S. at 699-700).

Reddix is unable to sustain his required showing that the subpoenaed documents, as they relate to Centurion, should be compelled to be produced by MDOC. Accordingly, the subpoenas should be quashed as set forth herein.

**II.   Centurion's confidential and proprietary information is not relevant to Reddix's criminal proceeding and, therefore, the subpoenas should be quashed.**

To satisfy the first prong of the *Nixon* test, Reddix must show that the materials sought in the subpoena are actually relevant to the particular counts with which he was charged. *United States v. Butler*, 429 F.3d 140, 149 (5th Cir. 2005); *see also Arditti,* 955 F.2d at 345 (holding that relevancy requires the moving party to show a sufficient likelihood that the requested material is relevant to the offenses charged in the indictment). Without detailed information about the documents sought in a Rule 17(c) subpoena, a court is only left "to speculate as to the specific nature of their contents and its relevance." *Arditti*, 955 F.2d at 346. Conclusory allegations of relevance are insufficient. *United States v. Ruedlinger*, 172 F.R.D. 453, 456 (D. Kan. 1997). The moving party, therefore, must specify why the materials are wanted, what information is contained in the documents, and why those documents would be relevant and admissible at trial. *See Arditti,* 955 F.2d at 345–46.

Here, Reddix's subpoena seeks Centurion documents that are plainly unrelated to the charges against him in this matter. For instance, Reddix seeks to compel the production of Centurion's proposals to provide medical services at *any* MDOC facility, even though Reddix's company (Health Assurance) provided correctional healthcare services only to a few MDOC

6

facilities.  Doc. 26.  Moreover, Reddix's alleged criminal conduct was completed by the time former Commissioner Epps in November 2014—before Centurion ever participated in an MDOC bid process.  Centurion did not submit a proposal to provide medical services until 2015, when MDOC issued RFP No. 15-030 for a three-year contract to provide medical and mental health services ("healthcare services") to the more than 17,000 inmates in the custody of correctional facilities under MDOC's authority.  Centurion's response to RFP No. 15-030 occurred *after* the indictment of Commissioner Epps, and *after* the dates of the alleged criminal acts by Reddix.  Indeed, RFP No. 15-030 was issued precisely because MDOC's new commissioner elected to cancel Reddix's contract and no longer do business with him.  The same is true, of course, for Centurion's response to RFP No. 16-009, which was provided in February 2016.

Centurion never submitted a proposal to MDOC or entered a contract with MDOC during the tenure of Commission Epps, the period relevant to this criminal matter.  As such, Reddix is unable to show how any of Centurion's proposal responses, related bid materials, or contract negotiations with agency officials has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Reddix is unable to show how the requests for any Centurion information are relevant to this ongoing criminal matter, and thus, the subpoenas are improper and should be quashed.

The subpoenas also fail the *Nixon* test as they are merely a fishing expedition.  A Rule 17 subpoena is not a discovery device, and cannot be used to conduct a fishing expedition.  *Arditti*, 955 F.2d at 346.  Because a Rule 17 subpoena is not a discovery device, it cannot ask for broad categories of documents, in the way that a civil subpoena might.  Rather, a Rule 17 subpoena must target particular documents and describe them with specificity.  *See United States v. Richardson*,

607 F.3d 357, 368-69 (4th Cir. 2010); *accord Arditti*, 955 F.2d at 345-46.  Here, the subpoenas identify only a small number of specific documents (e.g., public contracts that were actually entered) and, for the most part, seek an undefined—and potentially vast—amount of documents using broadly-worded categories that catch all manner of confidential commercial information.  As precedent forecloses using a Rule 17 subpoena as a discovery device, the subpoenas—as drafted—are objectionable.  The subpoenas, as they relate to Centurion, could provide no aid to Reddix's defense of this criminal matter and are not tailored to "obtain substantive evidence which might be admissible at trial." *Dale*, 155 F.R.D. at 152.

The subpoena requests as they relate to Centurion fail the *Nixon* test and should be quashed.

### III.    Requiring MDOC to produce Centurion's highly confidential information is unreasonable and oppressive.

Rule 17(c) grants the Court the authority to quash a subpoena that is "unreasonable or oppressive." Fed. R. Crim. P. 17(c).  The Court, "in making the determination whether compliance with the subpoena would be 'unreasonable or oppressive'" must consider the privacy interests of Centurion.  *United States v. Dale*, 155 F.R.D. 149, 151 (S.D. Miss. 1994) (quoting Fed. R. Crim. P. 17(c)).  "Such [privacy] interests fall within 'the confidentiality strand of privacy.'" *Id.* (quoting *Plante v. Gonzalez*, 575 F. 2d 1119, 1133 (5th Cir. 1978) (citing *Whalen v. Roe*, 429 U.S. 589 (1977)); *see also Ezell v. Parker*, 2015 WL 859033, at *2 (S.D. Miss. Feb. 27, 2015) (discussing the civil counterpart to Rule 17 and a challenge to a subpoena based on privacy and proprietary concerns).  The potential of publicizing the sensitive and private information of third parties, like Centurion, is a well-accepted reason to quash a Rule 17 subpoena.  *E.g.*, *United States v. Eisenhart*, 43 Fed. App'x 500, 505 (3d Cir. 2002).

The Court applies a balancing test to determine whether the production of the requested material should be compelled.  *Dale*, 155 F.R.D. at 151 (citing *Plante*, 575 F. 2d at 1134).

Centurion is engaged in the business of providing correctional healthcare services. As a private company, Centurion's bid materials—pricing proposals, staffing matrices, cost structures, and the like—are confidential and proprietary. In addition to revealing its financial data, the private financial records sought by the Reddix subpoenas could provide insight into the methods, strategies, staffing, technical approach, service models, quality control, and pricing that it has devoted time and resources to developing. Moreover, the information contained in Centurion's bid proposal responses and financial records is the result of proprietary systems and management techniques developed by Centurion in accordance with its commitment to providing and improving inmate healthcare services. In short, Centurion's financial records reveal how Centurion is able to successfully deliver quality services at a cost effective level—information that its competitors would be eager to have.

Maintaining the confidentiality of its sensitive commercial information is key to Centurion's competitiveness. For example, within weeks of MDOC issuing the second relevant RFP in December of 2015, Centurion was notified that the agency had received a public-records request for Centurion's first response to MDOC's RFP for correctional healthcare. At Centurion's request, he Hinds County Chancery Court issued an order prohibiting the release of these very same materials when they were sought by competitors of Centurion through a public records request to MDOC. *See* Exhibit A. If Centurion's responses to this competitive bid process were made public, its competitors would use this information to improve their competitive position relative to Centurion on future inmate healthcare services procurements, whether in Mississippi or in other states, by using Centurion's own numbers against it. There is nothing more prejudicial to a private company than giving its competitors access to its confidential commercial information and bidding strategies.

For this independent reason, the Court should quash these requests because they are unreasonable or oppressive pursuant to Rule 17(c) to the extent they seek to compel MDOC to produce the private and proprietary information of Centurion.

## IV. MDOC cannot produce confidential Centurion financial data without an appropriate protective order in place.

Alternatively, should the Court find that Reddix can satisfy his burden to demonstrate how the above-stated subpoena categories as they relate to Centurion comply with Rule 17, the Court should enter a protective order governing the disclosure of these highly sensitive and confidential documents. This Court has entered such an order to protect the very same materials in a civil matter that is proceeding against MDOC. *See* Exhibit B.

The protection of such information is precisely the type of compelling interest that justifies sealing a judicial proceeding, sealing materials, and issuing a protective order. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (recognizing that sealing judicial records may be appropriate for "sources of business information that might harm a litigant's competitive standing"); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (explaining that judicial proceedings may properly be closed for "the protection of a party's interest in confidential commercial information, such as a trade secret, where there is a sufficient threat of irreparable harm"); *Stamicarbon, N.V. v. American Cyanamid Co.*, 506 F.2d 532, 540–41 (2d Cir. 1974) (allowing limited in camera proceedings during contempt trial to protect trade secrets). Because the requested documents are not public record,[1] the Court may upon a good cause showing, restrict

---

[1] As noted, the Hinds County Chancery Court previously entered an order acknowledging that Centurion's bid proposals and related information were not subject to disclosure as public records. *See* Exhibit A (citing Miss. Code § 25-61-1 & Miss. Code § 79-23-1). Centurion anticipates that MDOC will produce its contracts with Centurion that are redacted to protect Centurion's confidential and proprietary information. Centurion has no objection to the production of its redacted contracts, which are available to the public online, and it does not seek to quash or limit the production of such redacted contracts in this Motion.

inspection of these confidential documents.  Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief.").

In this regard, it is noteworthy that when Centurion and other companies submit confidential financial information to state correctional agencies in connection with bids on contracts, states routinely provide that such information is protected from public disclosure under state open records laws.  That was the case with Centurion's bid for the MDOC contract, as the Chancery Court of Hinds County, Mississippi, previously held.  *See* Exhibit A.

Centurion does not oppose MDOC's compliance with the subpoena, as long as that compliance does not include the unprotected production of Centurion's commercially sensitive information, which would could be used by Centurion's competitors.  Absent a highly-confidential protective order, the unfettered production and use of Centurion's confidential commercial information unnecessarily risks putting Centurion at a competitive disadvantage and violates MDOC's own recognition that this information—when provided pursuant to a competitive public bid process—should be held in strict confidence by the agency.[2]

## CONCLUSION

For the reasons stated herein, the Court should quash the subpoenas (Doc. 26) as they seek to compel MDOC to produce confidential and proprietary information of Centurion as irrelevant and not tailored for the purpose of obtaining any substantive evidence admissible at trial in Reddix's defense.  Alternatively, if the Court finds the subpoenas satisfy the *Nixon* test, the Court should enter a protective order governing the disclosure of these highly confidential documents to ensure that Centurion's business interests are protected and not publicly disclosed.

---

[2] With or without a protective order in place, Centurion stands ready to make the responsive documents available to the Court for an *in camera* inspection.  From any such inspection, the Court will see that the documents contain the sort of financial data that could easily be misused by a competitor to gain an advantage against Centurion.

Respectfully submitted, this the 20th day of March, 2017.

/s/ Michael J. Bentley
Michael J. Bentley (MS Bar No. 102631)
Erin D. Saltaformaggio (MS Bar No. 103999)

**ATTORNEYS FOR CENTURION OF MISSISSIPPI, LLC**

OF COUNSEL:

BRADLEY ARANT BOULT CUMMINGS LLP
Suite 400, One Jackson Place
188 East Capitol Street
Post Office Box 1789
Jackson, Mississippi 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
mbentley@bradley.com
esaltaformaggio@bradley.com

4/508832.4

**CERTIFICATE OF SERVICE**

    I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the appropriate counsel in this case.

    THIS the 20th day of March, 2017.

s/ Michael J. Bentley  
OF COUNSEL
