# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

UNITED STATES

V.                                                          CAUSE NO.: 3:16cr-00050 DPJ-FKB

CARL REDDIX                                                                    DEFENDANT

## BRIEF IN SUPPORT OF MOTION TO DISMISS

**COMES NOW**, the Defendant Carl Reddix, by and through undersigned counsel of record and files this his Motion to Dismiss pursuant to Fed. R. Crim. P. 12(b)(3)(B)(iii) and for grounds would show unto the court the following, to-wit:

1.  On or about July 13, 2016, a federal grand jury returned a seven count indictment against Carl Reddix (hereinafter "Reddix") charging him with one count of conspiracy to commit honest services wire fraud and six counts of bribery. DE # 3. The government charged that in furtherance of the conspiracy and to carry out its objectives, that beginning in 2012 through October 1, 2014, Reddix provided Christopher Epps, the former commissioner of the Mississippi Department of Corrections, with cash payments "in exchange for CHRISTOPHER B. EPPS using his influence as commissioner of MDOC to benefit REDDIX and his company, Health Assurance, LLC financially."

2.  *U.S. v. McDonnell*, 136 S. Ct. 2355 (2016) requires this court to dismiss the government's indictment against Reddix. In *McDonnell,* former Virginia Governor Robert McDonnell (hereinafter "McDonnell") was charged with bribery after he and his family accepted more than $175,000 in gifts in from Jannie Williams (hereinafter "Williams") in exchange for certain actions that the government contended were "official acts." Id. at *2361. According to McDonnell's indictment,

Williams, the chief executive officer of Star Scientific, wanted Virginia's public universities to perform research studies on anatabine, a compound found in tobacco, and McDonnell's assistance in obtaining the studies." Id.

3.  The government listed five official acts in McDonnell's indictment. The alleged "official acts" were:

> (1) arranging meetings for [Williams] with Virginia government officials, who were subordinates of the Governor, to discuss and promote Anatabloc";
>
> (2) "hosting, and . . . attending, events at the Governor's Mansion designed to encourage Virginia university researchers to initiate studies of anatabine and to promote Star Scientific's products to doctors for referral to their patients";
>
> (3) "contacting other government officials in the [Governor's Office] as part of an effort to encourage Virginia state research universities to initiate studies of anatabine";
>
> (4) "promoting Star Scientific's products and facilitating its relationship with Virginia government officials by allowing [Williams] to invite individuals important to Star Scientific's business to exclusive events at the Governor's Mansion"; and
>
> (5) "recommending that senior government officials in the [Governor's Office] meet with Star Scientific executives to discuss ways that the company's product could lower healthcare costs." Supp.App. 47-48(indictment). Id. at 2365.

4.  At trial, the government asked the trial judge to instruct the jury that "official acts" included "'acts that a public official customarily performs' including acts `in furtherance of longer-term goals' or `in a series of steps to exercise or achieve an end.'" Id. McDonnell requested the court to instruct the jury that the "fact that an activity is a routine activity, or a `settled practice,' of an office-holder does not alone make it an `official act,' and that `merely arranging a meeting, attending an event, hosting a reception, or making a speech are not, standing alone, `official acts,' even if they are settled practices of the official, because they are not decisions on matters pending before the government." Id. McDonnell "also asked the court

to explain to the jury that an `official act' must intend to or `in fact' influence a specific official decision the government actually makes – such as awarding a contract, hiring a government employee, issuing a license, passing a law, or implementing a regulation." Id. at 2336.   The trial court denied McDonnell's alternate jury instruction.   Id.  Governor McDonnell was convicted. Id. at 2367.   On appeal, McDonnell challenged "the definition of `official action' in the jury instructions on the ground that it deemed `virtually all of a public servant's activities `official,' no matter how minor or innocuous." Id.

5. The issue in *McDonnell* was the proper interpretation of "official act." Id.  The government argued that "official act" included "any decision or action, on any question or matter, that may at any time be pending, or which may by law be brought before any public official, in such official's official capacity."  Id.  The Supreme Court rejected the government's definition of "official act."  Id. at 2367-68.

6. The Court noted that to prove an "official act" in a federal bribery case under Title 18 U.S.C. § 201(a)(3), "first, the government must identify a `question, matter, cause, suit, proceeding or controversy' that `may at any time be pending' or `may by law be brought'" before a public official.  Second, the Government must prove that the public official made a decision or took an action `on' that question, matter, cause, suit, proceeding, or controversy, or agreed to do so."  Id. at 2368.

7. The Supreme Court concluded that "hosting an event, meeting with other officials, or speaking with interested parties is not, standing alone, a `decision or action' within the meaning of § 201(a)(3), even if the event, meeting, or speech is related to a pending question or matter. Instead, something more is required: § 201(a)(3) specifies that the public official must make a decision or take an action on that question or matter, or agree to do so." Id. at 2369-70.

3

8. Specifically, the Court noted:

> Setting up a meeting, hosting an event, or calling an official (or agreeing to do so) merely to talk about a research study or to gather additional information, however, does not qualify as a decision or action on the pending question of whether to initiate the study. Simply expressing support for the research study at a meeting, event, or call – or sending a subordinate to such a meeting, event, or call – similarly does not qualify as a decision or action on the study, as long as the public official does not intend to exert pressure on another official or provide advice, knowing or intending such advice to form the basis for an "official act." Otherwise, if every action somehow related to the research study were an "official act," the requirement that the public official make a decision or take an action on that study, or agree to do so, would be meaningless."

9. Fed. R. Crim. P. 7(c)(1) provides in part that "the indictment or information must be a plain concise, and definite written statement of the essential facts constituting the offense charged …" "The foundational requirement [] of the indictment or information is that it give the defendant fair notice of the charges against him, which means in part that every element of the charged offenses must be stated." *U.S. v. Simpson*, 2011 U.S. Dist. LEXIS 76881 (N.D. Tex).

10. Although the government had the benefit of *McDonnell* when it handed down a seven count indictment against Reddix for conspiracy to commit honest services wire fraud and bribery, the government failed to enumerate any specific "official act" Epps took or promised to take for Reddix and/or Health Assurances. In Reddix's indictment, the government alleged that Reddix made cash payments to Epps so that Epps would use his influence as commissioner of MDOC to benefit REDDIX and his company, Health Assurance, LLC financially. The government also charged that Reddix made cash payments to Epps "with the intent to influence and reward CHRISTOPHER B. EPPS in connection with the business, transaction, and series of transactions of the Mississippi Department of Corrections … that is, the awarding and retention of contracts to Health Assurance, LLC for inmate health care services at MDOC facilities."

11. There is no question that the awarding and retention of contracts by a particular public official are official acts. *U.S. v. Nagin*, 810 F.3d 348 (5th Cir. 2016). The government failed to allege that Epps formally exercised any governmental power and promised to formally exercise governmental power as its relates to the awarding or retention contracts to Reddix and/or Health Assurances. Rather, in paragraphs 5, 6, and 7 of Reddix's indictment, the government charged that Health Assurances "obtained a contract" to provide inmate health services at Walnut Grove Correctional Facility in 2008, East Mississippi Correctional Facility and Marshall County Correctional Facility in 2012, and Wilkinson County Correctional Facility in 2013.

12. The government did not allege that Epps took any specific "official act" to award the contracts identified in paragraphs 5, 6, and 7 to Reddix and/or Health Assurances. Similarly, the government did not allege that Epps took any specific "official act" or promised to take any "official act" to insure Reddix/Health Assurances was awarded and retained the contracts identified in the indictment.

13. The contracts identified by the government in the indictment, except the 2008 contract for Walnut Grove Correctional Facility, were awarded in response to a request for proposals. Upon information and belief, Epps was not a member of the selection committee that reviewed the proposals and awarded the contracts outlined in the indictment to Reddix/Health Assurances. The government, however, does not allege that Epps used his official position to exert pressure on another official to perform an "official act" or to advise another official, knowing or intending that such advice will form the basis for an `official act' by another official.

14. Because all of the contracts, except the Walnut Grove contract, were awarded by a committee of which Epps was not a member and the indictment does not outline any specific "official act" Epps took or promised to take for Reddix/Health Assurances, the indictment is

insufficient to put Reddix on notice of what the government alleges he did, if any, that ran afoul of 18 U.S.C. § 1349 and 18 U.S.C. § 666(a)(2). Consequently, this court should dismiss the indictment against Reddix.

**WHEREFORE PREMISES CONSIDERED**, the defendant Carl Reddix prays that this Court will dismiss the indictment in this cause with prejudice and/or for any other relief that is proper and just under the premises.

**RESPECTFULLY SUBMITTED**, this the 4th day of April, 2017.

// Lisa M. Ross  
Lisa M. Ross (MSB#9755)  
Post Office Box 11264  
Jackson, MS 39283-1264  
(601) 981-7900 (telephone)  
(601) 981-7917 (facsimile)

**CERTIFICATE OF SERVICE**

I, hereby certify that I have this day electronically served the foregoing document upon each person designated on the record in this proceeding.

Darren LaMarca, AUSA  
United States Attorney's Office  
501 East Court Street  
Jackson, MS 39201

**SO, CERTIFIED** this the 4th day of April, 2017.

//s// Lisa M. Ross