UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                                          CRIMINAL NO. 3:16-CR-50-DPJ-FKB

CARL REDDIX

ORDER

The Government in this criminal case seeks a preliminary order of forfeiture in the form of a money judgment against Defendant Carl Reddix. Reddix opposes the Government's motion, arguing that a personal money judgment is not authorized by statute and the amount sought by the Government constitutes an excessive fine under the Eighth Amendment.

Neither party requested a hearing under Federal Rule of Criminal Procedure 32.2(b)(1)(B). So the Court may determine the issue "based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." *Id.* Here, the record would includes the Plea Agreement, Plea Supplement, and Pre-Sentence Investigative Report ("PSR").[1]

Based on the record and the applicable law, the Court concludes that a personal money judgment may be entered and the amount sought is not grossly disproportional to Reddix's wrongdoing. The Government's Motion for Determination of Money Judgment [55] is therefore granted.

---

[1] The Plea Supplement and PSR are not in the public record but are reliable and will be considered. First, although the Plea Supplement was filed under seal, the public's right to access outweighs the parties' interest in sealing the particular provisions cited herein. Second, the PSR has not yet been adopted, but the deadline for objections has passed, and both parties rely on undisputed portions of the PSR in their briefs. The Court will do the same.

I.      Discussion

On May 3, 2017, Reddix pleaded guilty to one count of bribery under 18 U.S.C. § 666(a)(2), related to kickbacks he paid to then Mississippi Department of Corrections Commissioner Christopher Epps for contracts awarded to Reddix's company, Health Assurance, LLC.  Under the Plea Agreement, Reddix stated that he understood "that an order of forfeiture will be entered by the Court as a part of Defendant's sentence and that such order is mandatory." Plea Agreement [51] ¶ 2.  The Plea Supplement Reddix signed went further:

> Defendant understands that any forfeiture order entered by the court is mandatory and is a part of his sentence.
>
> . . . Defendant agrees that the assets and property being forfeited, include, but are not limited to, the following:
>
> A money judgment in an amount to be determined by the court.

Plea Supplement [52] ¶ 10.

According to the PSR prepared by the United States Probation Officer, the net benefit received by Reddix and Health Assurance, LLC, of which Reddix is a 50% owner, was $2,532,876.00.  PSR ¶ 45.  Relying on this figure, the Government asks the Court to order forfeiture in the form of a money judgment in the amount of $1,266,438.00—half of the net benefit received as a result of the illegal kickbacks.

Reddix makes four arguments in response to the Government's motion.  First, he argues that forfeiture is not permitted under the statute because the Government has not identified "(1) any real property traceable to the subject violation; (2) any personal property traceable to the subject violation; or (3) any proceeds traceable to the subject violation."  Def.'s Resp. [59] at 2. Second, he says "there is no basis in the statute for this Court to enter a judgment of forfeiture in the form of a money judgment based on an amount of money that is in actuality nothing more than an economic fiction."  *Id.*  Third, he contends that the money judgment the Government

requested violates the excessive-fines clause of the Eight Amendment. *Id.* at 3. Finally, he says that, "if th[e] Court does impose the requested . . . money judgment . . . , the Court should consider the same when weighing the § 3553(a) factors and determining what sentence is sufficient, but not greater than necessary[,] to accomplish th[e] goals" of that statute. *Id.* at 5. The Court will address each argument in turn.

To begin, Reddix's traceability argument falls short because the Government has identified traceable proceeds. Title 18 U.S.C. § 981(a)(1)(C) requires forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Section 1956(c)(7)(D), in turn, defines "specified unlawful activity" to include "an offense under . . . section 666"—the statute of Reddix's conviction. So, under § 981, property derived from proceeds traceable to Reddix's bribery scheme are forfeitable.

The Government contends—and Reddix does not dispute—that the applicable definition of "proceeds" is found in § 981(a)(2)(B), which provides:

> In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

Significantly, this method for calculating "proceeds" is substantively the same as the one used in the PSR to calculate "the benefit received" under United States Sentencing Guideline 2C1.1. *See* PSR ¶ 45 (applying U.S.S.G. 2C1.1(b)(2)); *see also* U.S.S.G. 2C1.1(b)(2), Appl. Note 3 (defining "benefit received" as "net value of such benefit"). The only difference here is that the Government seeks 50% of the net-benefit calculation to match Reddix's 50% ownership

in the LLC that received those benefits. *See* Gov't's Mot. [55] at 3 (citing *United States v. St. Pierre*, 809 F. Supp. 2d 538 (E.D. La. 2011); *Honeycutt v. United States*, 137 S. Ct. 1626 (2017)). That reduction is appropriate and has not been disputed.[2]

Putting all this together, Reddix's argument that the money judgment is not traceable to the violation conflicts with the record. Reddix did not object to the benefits-received calculation in the PSR, nor could he. As he acknowledges in his response, his own accountant provided that calculation. Def.'s Resp. [59] at 1 (stating that Reddix's accountant provided "the $2,532,876 Net Benefit Determination"). Nor has he explained why the undisputed benefit-received calculation—which tracks the statutory definition of "proceeds"—is an "economic fiction." Reddix owns half of an LLC that netted over $2.5 million from illegally obtained contracts.

To the extent Reddix may be saying that he does not now possess those funds, the Fifth Circuit rejected that argument in *United States v. Nagin*, noting: "Because the sanction follows the defendant as a part of the penalty, the government need not prove that the defendant actually has the forfeited proceeds in his possession at the time of conviction." 810 F.3d 348, 353 (5th Cir.) (quoting *United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006)), *cert. denied*, 137 S. Ct. 41 (2016). Accordingly, the Court finds that the "proceeds" equal $1,266,438.00.

Reddix next says—based on a non-binding district-court case from another circuit—that § 981(a)(1)(C) does not allow money judgments. Def.'s Resp. [59] at 2 (citing *United States v. Surgent*, No. 04-CR-364, 2009 WL 2525137 (E.D.N.Y. Aug. 17, 2009)). But that argument was also rejected in *United States v. Nagin*. There, the former mayor of New Orleans was convicted of "bribery, 'honest-services' wire fraud, conspiracy to commit bribery and honest-services wire fraud, conspiracy to commit money laundering, and filing false tax returns." 810 F.3d at 349.

---

[2] As noted later, however, the Court does question whether the guideline calculation should likewise be reduced to reflect Reddix's interest in the net benefits.

4

As part of the sentence, "the district court rendered a personal money judgment ordering Nagin to forfeit to the United States an amount of $501,200.56." *Id.* at 352. Nagin argued on appeal that the personal money judgment "was not authorized by statute." *Id.* The Fifth Circuit disagreed, finding that "personal property" under § 981(a)(1)(C) could include money and held that "nothing in 18 U.S.C. § 981(a)(1)(C)'s test excludes personal money judgments." *Id.* at 353. The Court is bound to follow *Nagin* and therefore concludes that—consistent with the agreement of the parties—it may enter a personal money judgment against Reddix under § 981(a)(1)(C).

Reddix next says a personal money judgment in excess of $1.2 million would violate the Eighth Amendment's prohibition on excessive fines. Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. If a forfeiture order "constitute[s] punishment for an offense" it is a fine within the meaning of the Eighth Amendment. *United States v. Bajakajian*, 524 U.S. 321, 328 (1998). Reddix argues—and the Government assumes for purposes of its motion—that the forfeiture order here would be punitive and therefore subject to the Eighth Amendment. *See United States v. Webber*, 536 F.3d 584, 602–03 (7th Cir. 2008) ("Forfeiture and restitution are distinct remedies. Restitution is remedial in nature, and its goal is to restore the victim's loss. Forfeiture, in contrast, is punitive; it seeks to disgorge profits that the offender realized from his illegal activity.") (citation omitted), *cited in United States v. Taylor*, 582 F.3d 558, 566 (5th Cir. 2009).

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334. "[A] punitive

5

forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.*

> Among the factors that the Court considered in *Bajakajian* in making the proportionality determination were: (a) the essence of the defendant's crime and its relationship to other criminal activity; (b) whether the defendant was within the class of people for whom the statute of conviction was principally designed; (c) the maximum sentence, including the fine that could have been imposed; and (d) the nature of the harm resulting from the defendant's conduct.

*United States v. Mora*, 644 F. App'x 316, 317 (5th Cir. 2016).

Reddix addresses one of the *Bajakajian* factors when he notes that the guideline fine range as set forth in the PSR is between $15,000 and $150,000. *See* PSR ¶ 97. Of course, the statutory maximum fine is $250,000, *id.* ¶ 95, which is still less than the proceeds. As far as the other elements of the maximum sentence available, the statutory maximum term of imprisonment for the count of conviction is 10 years, with a guideline range of 108 to 120 months. *Id.* ¶¶ 88–89. So while the money judgment sought by the Government exceeds the statutory maximum fine, the overall available sentence is fairly substantial.

Neither party addresses the remaining *Bajakajian* factors, but to the extent the available sentence is a close call, the other factors are not. To begin, the essence of Reddix's crime and its harm clearly justify the money judgment the Government seeks. Reddix paid $187,500 in kickbacks to the highest ranking public official in the Mississippi Department of Corrections while securing $31,852,270 in contracts over a three-year period. PSR ¶ 45. Bribery is a serious breach of the public trust, and the forfeiture amount is a sliver of the value of the actual contracts Reddix unlawfully secured. In fact, the forfeiture amount is directly proportional to Reddix's ownership interest in the proceeds of the offense. Finally, Reddix was obviously within the class of people for whom the statute of conviction was designed.

The Fifth Circuit faced somewhat similar facts in *United States v. Wyly*, where a corporate defendant was ordered to forfeit more than $4 million in assets after a bribery conviction. 193 F.3d 289, 303 (5th Cir. 1999). It is a little difficult to determine the net benefit to the defendants in *Wyly*, but the dollar amounts mentioned in the opinion do not approach the contracts Reddix secured. Like Reddix, the *Wyly* defendant argued that the forfeiture was excessive, but the Fifth Circuit disagreed:

> The district court held that the forfeiture was not disproportionate because ECCS was convicted of a comprehensive criminal conspiracy involving bribery of the highest ranking law enforcement officer in the parish; the scheme continued for more than six years and involved manipulation of various financial accounts and institutions and at least five individuals; the forfeited property was closely related to the money laundering offenses; ECCS and ECDC were born out of the scheme to defraud the citizens of the parish of the honest and faithful services of their sheriff; the money paid Rinicker flowed through the forfeited bank accounts; and the CD was purchased with funds derived from the conspiracy.
>
> The factual findings are not clearly erroneous. Nor did the court err in concluding that the forfeiture was not grossly disproportionate.

*Id.* The Fifth Circuit concluded that the forfeiture in *Wyly* was not grossly disproportional. The same is true here.

Finally, Reddix offers three additional facts to support his contention that a $1.2 million forfeiture judgment is grossly disproportional to his offense. First, he says that the $1.2 million figure "bears no relationship to any actual benefit received by" Reddix, given that "[d]uring the relevant time, Mr. Reddix's total compensation from Health Assurance was only $466,648.00." Def.'s Resp. [59] at 4. Reddix bases that statement on paragraph 81 of the PSR, which provides his weekly salary. But this argument fails to acknowledge that he owned 50% of an LLC that—according to his accountant—realized a *net* benefit of over $2.5 million from the illegal contracts.

7

Next, Reddix states that the $1.2 million "is not connected to any actual loss to the MDOC, or any actual loss to any other person" because "[t]here is . . . no evidence that the contracted medical services were not provide[d]" or "that the payment of kickbacks . . . caused the [State of Mississippi] to pay more than it should have for the medical services at issue." *Id.* This argument fails to recognize what was really lost or acknowledge the "gravity of the offense [the forfeiture] is designed to punish." *Bajakajian*, 524 U.S. at 334. The question is not whether Reddix performed under the contracts but whether he bribed a public official to obtain them. The public has a right to an above-board bidding process. So even assuming he earned the $31 million, a forfeiture based on the ill-gotten gains is not grossly disproportional.

Finally, Reddix notes that "the State of Mississippi has yet to pay approximately 1.2 million dollars in pharmacy bills that were owed to Health Assurance while at the same time retaining more than $100,000 in Health Assurance property and equipment." *Id.* at 5. But Reddix has not argued that these amounts would reduce the "proceeds" calculation, and his issues with the State fail to show that the forfeiture amount is grossly disproportional to his federal crime. Regardless, none of these additional arguments track *Bajakajian* or otherwise compare the gravity of the offense to the amount to be forfeited. The Government's requested money judgment does not violate the Excessive Fines Clause of the Eighth Amendment.

Finally, Reddix contends that, if the Court imposes a money judgment in the amount of $1,266,438.00, it should consider that judgment when weighing the § 3553(a) factors and determining Reddix's sentence. The Government agrees "that the court has full discretion—limited only by statutory minima and maxima and the sentencing factors in 18 U.S.C. § 3553—in fashioning the appropriate sentence." Gov't's Reply [60] at 11. The Court will take the order of forfeiture into account when rendering the sentence in this matter.

II.     Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, the Government's Motion for Determination of Money Judgment [55] is granted, and an order of forfeiture in the form of a money judgment in the amount of $1,266,438.00 will be entered. The Government is directed to submit a proposed Preliminary Order of Forfeiture pursuant to Federal Rule of Criminal Procedure 32.2(b)(2) within 10 days of the entry of this Order. Also within 10 days of the entry of this Order, the parties are directed to discuss whether the calculation under U.S.S.G. 2C1.1 should account for Reddix's ownership interest in the LLC that received the benefit. *Compare United States v. Bankston*, 182 F.3d 296, 317–18 (5th Cir. 1999), *rev'd sub nom. Cleveland v. United States*, 531 U.S. 12 (2000), and *cert. granted, cause remanded sub nom. Goodson v. United States*, 531 U.S. 987 (2000), *with United States v. Esquenazi*, 752 F.3d 912, 936−37 (11th Cir. 2014). If the parties disagree about the disposition of that issue, they shall simultaneously file briefs addressing the issue within 14 days of the entry of this Order. Following the entry of the Preliminary Order of Forfeiture, the parties should contact Courtroom Deputy Shone Powell to set this case for a sentencing hearing.

**SO ORDERED AND ADJUDGED** this the 25th day of October, 2017.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE