IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.	CRIMINAL NO. 3:16cr50 DPJ-FKB

CARL REDDIX

DEFENDANT'S BRIEF AND OBJECTION
TO U.S.S.G. 2C1.1 CALCULATION

The Defendant, Carl Reddix, by and through undersigned counsel, and files this Brief and Objection[1] to U.S.S.G. 2C1.1 Calculation as follows:

1.	This Court found in its Order [Dkt. 61] that the Government was entitled to a $1,266,438.00 money judgment against Reddix. This figure represents the amount of the proceeds from the kickback scheme that were attributable directly or indirectly to Reddix via his 50% ownership interest in Health Assurance, LLC.

2.	In this Court's Order, the Court *sua sponte* raised the issue of whether the $2,532,876.00 net benefit number contained in the PSR is the proper loss amount for enhancement purposes under U.S.S.G. 2C1.1(b)(2), or if this number should similarly be reduced to $1,266,438.00 based on Reddix's 50% ownership interest in Health Assurance. The parties were not able to agree on the answer to this question. For the reasons below, Reddix now interposes this objection to the use of the $2,532,876.00 net benefit calculation without reduction commensurate with his 50% ownership of Health Assurance.

3.	The $1,266,438.00 number was calculated in accord with the case *United States v. St. Pierre*, 809 F. Supp. 2d 538, 544–45 (E.D. La. 2011). In the *St. Pierre* case, the court

---

[1] Reddix recognizes that the deadline for objections to the PSR has passed. However, in light of the specific issue raised by the Court in its own discretion, Reddix now formally asserts his objection to the use of the $2,532,876.00 net benefit number without a reduction commensurate with Reddix's 50% ownership interest in Health Assurance.

1

recognized that it was unreasonable and inconsistent with the purpose of forfeiture to require St. Pierre to forfeit funds which he neither directly or indirectly received. In other words, the court would not consider for enhancement purposes those proceeds that were diverted to St. Pierre's business partners, who were not co-conspirators, before they ever could have been acquired by St. Pierre. *United States v. St. Pierre*, 809 F. Supp. 2d 538, 545 (E.D. La. 2011). This Court should recognize that the fairness concerns expressed by the *St. Pierre* court in the context of forfeiture are equally applicable to sentencing the present sentencing enhancement issue.

4. The Government had indicated that it is of the opinion that limiting the net benefit number by Reddix's 50% ownership interest would discount the effect of Reddix's crimes in a manner that is contrary to the Sentencing Guidelines. However, Reddix is unaware of any specific language in the Sentencing Guidelines which actually supports the Government's position. Moreover, as set forth in *United States v. Bankston*,[2] the Sentencing Guidelines can be read in a manner which is completely consistence with the requested reduction.

5. The Government and Reddix do not appear to agree on the interpretation and implications of the *Bankson* case. In *Bankson*, Fred Goodson and Carl Cleveland each owned 50% of TSG, Ltd, which was a video poker business. Bribes were paid in return for protection of the poker business from legislation that would interfere with its future operation. *Id.* at 317. The value of the benefit received from the bribes was determined to be the $2.8 million in revenues that resulted from the continued operation of the video poker business over a two-year period. *Id.* The district court found that Fred Goodson's expected benefit was 50% of that revenue. *Id.* at 317. The Government cross-appealed arguing that the district court erred in

---

[2] *United States v. Bankston*, 182 F.3d 296 (5th Cir. 1999)*rev'd sub nom. Cleveland v. United States*, 531 U.S. 12 (2000), and *cert. granted, cause remanded sub nom. Goodson v. United States*, 531 U.S. 987 (2000), *with United States v. Esquenazi*, 752 F.3d 912, 936−37 (11th Cir. 2014).

reducing the net benefit by the ownership percentage in TSG, i.e., the "personal benefit" versus the "actual benefit sought". *Id.* In addressing this issue, the Fifth Circuit reasoned that:

> if Fred Goodson, in his individual capacity, bribed Bankston, then the district court properly limited 'expected benefit' to an amount equivalent to Goodson's personal benefit. If, on the other hand, Fred Goodson, as agent for TSG, Ltd., bribed Bankston, then the Government would be correct that the expected benefit ought to be measured by the profits to the RICO enterprise.

*Id.* at 318. Affirming the district court's findings, the Fifth Circuit held that because "the evidence presented at trial could support either the individual-capacity or RICO-enterprise theory of bribery, we cannot conclude that the district court committed clear error in determining that the personal benefit to Goodson was the appropriate valuation of the expected benefit to be received." *Id.* at 318. In so holding, the Fifth Circuit specifically pointed to the Commentary to section 2C1.1 explaining that:

> the punishment should be commensurate with the 'gain to the payer or the recipient of the bribe,' whichever is higher. As contemplated by the Commission, the 'gain to the payer' is the 'value of the benefit received or to be received.' Thus, the expected benefit to be received as referenced in section 2C1.1 is the benefit to the payer of the bribe.

*Id*. The Fifth Circuit has also subsequently positively cited *Bankston* case for the proposition that "[t]he amount of benefit to be received is a fact finding issue that is reviewed for clear error." *United States v. Griffin*, 324 F.3d 330, 365–66 (5th Cir. 2003).

      6.      The Reddix case is not a RICO-enterprise bribery case. The co-owner of Health Assurance was not charged or indicted. The proceeds attributable to the wrongdoing were paid directly to Health Assurance as opposed to Reddix personally. Applying the reasoning and rational from *Bankston* to the facts of the Reddix case can only lead to the conclusion that the net benefit to Reddix should be reduced by 50%.

      7.      The case of *United States v. Esquenazi*, 752 F.3d 912 (11th Cir. 2014) is a somewhat contrary but distinguishable case. Joel Esquenazi and Carlos Rodriguez were the co-

3

owners of Terra Telecommunications Corp. – a company that purchased and resold phone time. Both of Terra's owners were indicted for paying bribes to reduce Terra's bills by over $2.2 million. *Esquenazi*, 752 F.3d at 919.  The presentence investigation report included a 16–level enhancement based on Terra's receipt of $2.2 million from the bribery scheme, under USSG § 2B1.1(b)(1)(I).  Esquenazi and Rodriguez challenged the 16-level enhancement arguing that the district court erred in using the $2.2 million benefit to Terra rather than the value of what they each individually received.  *Id.* at 937.  Because this issue was not raised at sentencing, the Eleventh Circuit was limited to reviewing the issue for plain error.  In refusing to reverse the district court, the Eleventh Circuit concluded its previous language in *United States v. Huff,* 609 F.3d 1240, 1245–46 (11th Cir.2010) (interpreting *United States v. DeVegter,* 439 F.3d 1299 (11th Cir.2006), "forecloses the possibility that any error regarding the loss amount calculation in this case could be plain." *Id.* at 936–37.

8. The *Esquenazi* case is distinguishable from *Bankston*.  First, it is an Eleventh Circuit Case as opposed to a Fifth Circuit case.  Second, while both were reviewed for plain error, the *Esquenazi* court did not actually analyze the specific issue.  Instead, the Eleventh Circuit – while conceding that the issue had not been "squarely" presented before – simply stated that they have previously interpreted their own precedent to mean the loss calculation is based on the improper benefit to a company. *Id* at 937.  Third, in *Esquenazi*, both owners of the company receiving the benefit of the bribe were involved, charged and convicted.  Accordingly, the bribes in *Esquenazi* were paid as part of a joint criminal enterprise by and between the owners rather than a criminal act by one of the owners acting individually.

9. Importantly, this Court has already recognized that the prescribed method for calculating the amount of the "proceeds" which the money judgment would be based on in this

4

case is substantially the same method prescribed by the Sentencing Guidelines to calculate "the benefit received" for enhancement purposes. Also, there is a substantial similarity between the conclusion in the *St. Pierre* case that the money judgment should be limited to the defendant's 50% ownership interest, and the conclusion in the *Bankston* case that is was appropriate to reduce the net benefit to the defendant's actual ownership interest. As a practical matter, there is no logically consistent rational in the Reddix case for reducing the $2,532,876.00 number in one instance and not the other. Furthermore, reducing the net benefit number commensurate with Reddix's ownership interest would not in any way cause disparate sentences for others involved in similar schemes.

10. For these reasons, Reddix respectfully requests that this Court reduce the net benefit calculation under section 2C1.1 to $1,266,438.00 based on the fact that he was only a 50% owner of Health Assurance.

Respectfully submitted, this the 8th day of November 2017.

        **CARL REDDIX,**
        **Defendant**

        By: /s/*Michael V. Cory, Jr*_____
            Michael V. Cory, Jr

        By: /s/*Robert L. Johnson, III*_____
            Robert L. Johnson, III

**OF COUNSEL:**

Michael V. Cory, Jr., (MSB #9868)
213 South Lamar Street
Jackson, Mississippi (39201)
Post Office Box 1759
Jackson, Mississippi 39215-1759
Telephone: 601.957.3101

Robert L. Johnson, III (MSB #8555)
5600 Jackson Raymond Road
Raymond, Mississippi 39154
Telephone: 601.331.7271
Facsimile: 601.346.0070

## CERTIFICATE OF SERVICE

I, Michael V. Cory, Jr., do hereby certify that I have this day caused to be electronically mailed, a true and correct copy of the above and foregoing all counsel of record.

This the 8th day of November 2017.

/s/*Michael V. Cory, Jr*_____
Michael V. Cory, Jr