# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 3:16cr50-DPJ-FKB

CARL REDDIX

## GOVERNMENT'S RESPONSE

Pursuant to the Court's directive, the government files this response to the Court's question regarding the application of U.S.S.G. § 2C1.1 to the facts of this case. *See* Dkt. No. 61, at 9. For the following reasons, the proper measure for determining the offense-level increase dictated by U.S.S.G. § 2C1.1 (b)(2) is the profit received by Health Assurance, LLC: $2,532,876.00.

## BACKGROUND

**A.  Underlying Conduct**

The defendant, Carl Reddix, is one of two owners of Health Assurance, LLC. *See* Presentence Report ¶ 1. For several years, his company executed contracts with the State of Mississippi, wherein Health Assurance, LLC provided healthcare services to inmates at Mississippi Department of Corrections (MDOC) facilities in exchange for payment. *See id*. Reddix obtained these contracts through illegal means: bribery of the MDOC Commissioner. *See id.* ¶¶ 1, 3, 9, 25-44, 48.

**B.  Indictment and Guilty Plea**

A grand jury returned a seven-count indictment against Reddix, charging him with bribery and bribery-related crimes. Dkt. No. 3. Reddix retained counsel, entered into a plea agreement with the government, and subsequently pled guilty to bribing a state government agency, in violation of 18 U.S.C. § 666(a)(2). *See* Dkt. Entry dated May 3, 2017; Dkt. No. 3.

**C.  Presentence Investigation Report**

Following his guilty plea, the probation officer prepared a preliminary presentence investigation report ("PSR"). After summarizing

## BACKGROUND

**A.  Underlying Conduct**

The defendant, Carl Reddix, is one of two owners of Health Assurance, LLC. *See* Presentence Report ¶ 1. For several years, his company executed contracts with the State of Mississippi, wherein Health Assurance, LLC provided healthcare services to inmates at Mississippi Department of Corrections (MDOC) facilities in exchange for payment. *See id*. Reddix obtained these contracts through illegal means: bribery of the MDOC Commissioner. *See id.* ¶¶ 1, 3, 9, 25-44, 48.

**B.  Indictment and Guilty Plea**

A grand jury returned a seven-count indictment against Reddix, charging him with bribery and bribery-related crimes. Dkt. No. 3. Reddix retained counsel, entered into a plea agreement with the government, and subsequently pled guilty to bribing a state government agency, in violation of 18 U.S.C. § 666(a)(2). *See* Dkt. Entry dated May 3, 2017; Dkt. No. 3.

**C.  Presentence Investigation Report**

Following his guilty plea, the probation officer prepared a preliminary presentence investigation report ("PSR"). After summarizing

Reddix's crimes, the PSR reveals that Reddix paid $187,500.00 in bribes to the MDOC Commissioner in exchange for the Commissioner awarding his company nearly $32MM in contracts. *See* PSR ¶ 45. Reddix's company incurred more than $29MM in direct costs associated with fulfilling those contracts. *Id*. Thus, the net benefit (i.e., total contract amount minus direct costs) to Reddix and his company was $2,532,876.00. *Id*.

Reddix provided these figures to the probation officer. *Id*. He did not object to these provisions within the preliminary PSR. Thereafter, the probation officer provided a final version of the PSR, which includes this profit calculation. *See* PSR ¶ 45.

**D.    Government's Motion for Forfeiture**

After receiving the PSR, the government filed a motion for forfeiture and requested a money judgment equal to one-half of the profits retained by Reddix's company. Dkt. No. 55. Reddix objected, principally arguing that a money judgment for substitute assets was improper and that the requested judgment violated the Eighth Amendment's Excessive Fines

Clause. Dkt. No. 59. After considering Reddix's arguments, this Court granted the government's motion. Dkt. No. 61.

**E.  Court's Directive**

The Court has asked the parties to clarify "whether the calculation under U.S.S.G. § 2C1.1 [in Paragraph 45 of the PSR] should account for Reddix's ownership interest in the LLC that received the benefit." Dkt. No. 61. As detailed below, it should not. Rather, the portion of the PSR predicated on U.S.S.G. § 2C1.1 should—and does—account for the entire profit Reddix obtained for his company: $2,532,876.00. *See* PSR ¶ 45.

## ANALYSIS

**A.  Relevant Guidelines' Provision**

For Reddix's bribery offense, the Sentencing Guidelines adjust Reddix's offense level based on the "benefit received or to be received" as a result of his bribery payments. U.S.S.G. § 2C1.1(b)(2) (providing an offense-level adjustment where the benefit received exceeds $6,500.00).[1]

---

[1] For the purposes of Reddix's sentencing, the parties agree that the "net benefit" provision in U.S.S.G. § 2C1.1(b)(2) applies to Reddix's case. *See* U.S.S.G. § 2C1.1(b)(2) (noting other bases for determining the offense level, such as the loss to the government and the value of anything obtained by a public official).

Reddix's offense level increases 14 levels if the "benefit received" exceeded $550,000; it increases 16 levels if the "benefit received" exceeded $1.5 million. *See id*. (cross-referencing U.S.S.G. § 2B1.1).

B.     **The "Benefit Received" Exceeds $2.5 Million**

The proper measure for determining the offense-level increase is the "benefit received" by Reddix's company, Health Assurance, LLC; that is, the $2.5 million[2] profit that Reddix's company received from the MDOC contracts. This is so for at least three reasons:

First, Reddix, a one-half owner of Health Assurance, LLC, acted as his company's agent when he bribed the MDOC Commissioner. He is accountable, therefore, for the full measure of profits gained by his company through the bribe-induced contracts. *See United States v. Bankston*, 182 F.3d 296, 318 (5th Cir. 1999)[3] (holding that, where an individual pays a bribe as an agent for a company, the "expected benefit" is

---

[2] For simplicity, the government approximates the profit as $2.5MM. The exact profit is $2,532,876.00. *See* PSR ¶ 45.

[3] Reversed on other grounds. *See Cleveland v. United States*, 531 U.S. 12 (2000); *Goodson v. United States*, 531 U.S. 987 (2000).

measured by the profit to that company); *see also United States v. Kinter*, 235 F.3d 192, 196 (4th Cir. 2000) ("Because [the defendant] acted as an agent for [the company who was awarded government contracts], [that company] was, in reality, the relevant payer, and [the defendant's] sentence was properly enhanced by the gain to [that company].").

Second, the Sentencing Guidelines state that offense characteristics (such as the bribe-induced "benefit received" here) "shall be determined" based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A).[4] According to the PSR, which Reddix accepts as true, Reddix bribed the MDOC Commissioner, which caused the Commissioner to award MDOC contracts to Reddix's company. Those contracts resulted in a $2.5 million profit. PSR ¶ 45. Thus, the "acts . . . willfully caused by [Reddix]" include the full measure of profit gained by

---

[4] This provision applies to acts or omissions "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1).

his company.  *See* U.S.S.G. § 1B1.3(a)(1)(A).  Reddix is rightly held accountable for this full amount.

Third, the Sentencing Guidelines state that offense characteristics for "jointly undertaken criminal activity" "shall be determined" based on "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).[5]  Relevant here, jointly undertaken criminal activities include "criminal plan[s], scheme[s], endeavor[s], or enterprise[s] undertaken by the defendant in concert with others, <u>whether or not charged as a conspiracy</u>."  *Id*. (emphasis added).  Reddix worked in concert with his company to induce and receive millions of dollars in contracts.  The $2.5 million profit received by his company from the bribe-tainted contracts were not only foreseeable, they were expected and desired.  As

---

[5] See note 4.

such, the PSR correctly adjusts the offense level to account for the full measure of the profit received by Reddix's company.

A contrary outcome would discount the effect of Reddix's crimes in a manner that is contrary to the explicit provisions of the Sentencing Guidelines. In fact, the general principles outlined in U.S.S.G. § 1B1.3 reflect the Sentencing Commission's informed belief that the repugnance of a middleman's crime and the magnitude of its effect upon the efficient operation of government are more accurately measured by the ultimate payer's profits than by the middleman's individualized profit from the scheme. *See United States v. Kinter*, 235 F.3d 192, 196 (4th Cir. 2000).

Here, Reddix's actions—taken on behalf of his company—include inducing the award of government contracts through bribes with the aim of enriching his company. Reddix succeeded in this criminal endeavor. Thus, he should be accountable for the full amount of profit he and his company gained through this criminal undertaking. The PSR's offense-characteristic calculation is correct.

## C. Purposes Underlying the Guidelines' Offense Characteristics Differ from Purposes Underlying Forfeiture

Purposes underlying the use of offense characteristics in the PSR differ from purposes underlying criminal forfeiture.

"Criminal forfeiture statutes empower the Government to confiscate property derived from or used to facilitate criminal activity." *Honeycutt v. United States*, 137 S. Ct. 1626, 1631 (2017). In so doing, forfeiture statutes "serve important governmental interests such as separating a criminal from his ill-gotten gains, returning property, in full, to those wrongfully deprived or defrauded of it, and lessening the economic power of criminal enterprises." *Id*. (quotation marks omitted). As such, forfeiture in this case is limited to Reddix's portion of the ill-gotten gains.

Unlike criminal forfeiture statutes, which require defendants to disgorge themselves of ill-gotten gains and the instruments used to carry out illegal conduct, offense characteristics in the Sentencing Guidelines are intended to "further the basic purposes of criminal punishment: deterrence, incapacitation, just punishment, and rehabilitation." U.S.S.G. Ch. 1, Pt. A, Subpt. 1. Whether Reddix pocketed $2.5 million directly or

whether he paved the way for his company to do so is irrelevant to the determination of the "benefit received" here. The Sentencing Guidelines rightly hold Reddix accountable for the full measure of his company's illegal enrichment. This ensures that Reddix's guidelines range is in line with that of others who are involved in similar schemes to defraud the government and enrich themselves and those associated with them.[6]

## CONCLUSION

For the foregoing reasons, the proper measure for determining the offense-level increase in paragraph 45 of the PSR is the benefit received by Health Assurance, LLC: $2,532,876.00. The PSR's offense-characteristic calculation is correct.

Respectfully submitted,

D. MICHAEL HURST, JR.
*United States Attorney for the*
*Southern District of Mississippi*

---

[6] Another difference between the guidelines calculation and criminal forfeiture is that forfeiture is non-discretionary, but the guideline range is advisory. *Compare* Fed. R. Crim. P. 32.2(b), *with* 18 U.S.C. § 3553(a).

|                              | DARREN J. LAMARCA                       |
|                              | *Assistant United States Attorney*      |
|                              |                                         |
|                              | By:  /s/ *Jennifer Case*                |
|                              | JENNIFER CASE                           |
|                              | Mississippi Bar Number 104238           |
|                              | *Assistant United States Attorney*      |
|                              | 501 E. Court Street, Suite 4.430        |
|                              | Jackson, Mississippi  39201             |
| Dated:  November 8, 2017     | (601) 965-4480                          |

# CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the Electronic Case Filing (ECF) system, which served to send notification of this filing to the appropriate counsel in this case.

Dated: November 8, 2017

/s/ *Darren J. LaMarca*
DARREN J. LAMARCA
*Assistant United States Attorney*