```
 1                  UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
 2                        NORTHERN DIVISION

 3

 4    UNITED STATES OF AMERICA

 5          vs.                   Criminal Action No. 3:16CR50-DPJ-FKB

 6

 7    CARL REDDIX

 8

 9          COURT REPORTER'S TRANSCRIPT OF CHANGE OF PLEA

10

11          BEFORE HONORABLE DANIEL P. JORDAN, III
                UNITED STATES DISTRICT COURT JUDGE

12                        May 3, 2017
                      Jackson, Mississippi
13

14    APPEARANCES:

15    MR. DARREN J. LAMARCA
      MR. PATRICK LEMON
16    Assistant United States Attorneys

17

18          Representing the Government,
            United States of America
19

20    MS. LISA ROSS
      Attorney at Law
21
            Representing the Defendant,
22          Carl Reddix

23

24    COURT REPORTER:
      Brenda D. Wolverton, RPR, CRR, FCRR
      Jackson, Mississippi
25
```

1          THE COURT:  Good afternoon.  Mr. LaMarca, are you

2     ready?

3          MR. LAMARCA:  Yes.  May it please the court, the

4     matter before the court is United States versus Carl Reddix.

5     This is Criminal No. 3:16cr50.  Your Honor, Mr. Reddix is

6     present in court with his attorney, Lisa Ross.  He is present

7     for a change of plea as to Count 7 of the indictment pending

8     against him, and they are, through all indications, ready to

9     make that change of plea, Your Honor.

10          THE COURT:  All right.  Thank you.  Ms. Ross, if you

11     would come forward with your client, please?  All right.  Dr.

12     Reddix, good afternoon.

13          THE DEFENDANT:  Good afternoon.

14          THE COURT:  My understanding from Mr. LaMarca is that

15     you wish to change your plea as to Count 7 of the indictment.

16     Is that correct?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Before I begin, Ms. Powell here with give

19     you an oath.

20          *(Whereupon the defendant was sworn.)*

21          THE COURT:  All right.  Do you understand that you are

22     now under oath?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And you understand that your answers to my

25     questions have to be truthful?

```
1              THE DEFENDANT:  Yes.
2              THE COURT:  Do you understand that if your answers are
3    not truthful that you might subject yourself to further
4    prosecution for giving a false statement?
5              THE DEFENDANT:  Yes.
6              THE COURT:  All right.  What's your full name?
7              THE DEFENDANT:  Carl Machell Reddix.
8              THE COURT:  All right.  Mr. Reddix, if I ask you a
9    question this afternoon that you can't hear or if you don't
10   understand the question or you need me to repeat it or restate
11   it for any reason whatsoever, I want you to let me know and I
12   will be happy to do that.  All right?
13             THE DEFENDANT:  I will.
14             THE COURT:  I want to make sure that you fully
15   understand my questions before you give responses.  All right?
16             THE DEFENDANT:  Yes.
17             THE COURT:  Also if at any point you want to speak
18   with Ms. Ross, let me know and I will let the two of you step
19   back and do that.  Okay?
20             THE DEFENDANT:  Yes.
21             THE COURT:  All right.  If you answer my question, I
22   am going to assume that you heard it, that you understood it
23   and that you gave me a truthful response.  Is that fair?
24             THE DEFENDANT:  Yes.
25             THE COURT:  All right.  How old are you?  How old are
```

```
1    you?
2              THE DEFENDANT:  58.
3              THE COURT:  Okay.
4              THE DEFENDANT:  Soon to be 59.
5              THE COURT:  All right.  And how far did you go in
6    school?
7              THE DEFENDANT:  13 years after high school.
8              THE COURT:  Okay.  And you're a medical doctor.  Is
9    that right?
10             THE DEFENDANT:  Correct.
11             THE COURT:  All right.  Have you ever been treated for
12   any mental illnesses?
13             THE DEFENDANT:  Anxiety.
14             THE COURT:  Okay.  Are you currently under treatment
15   for anxiety?
16             THE DEFENDANT:  Yes.
17             THE COURT:  Are you taking any medications --
18             THE DEFENDANT:  No.
19             THE COURT:  -- for that?  All right.  Have you ever
20   been treated for any addictions to narcotic drugs of any kind?
21             THE DEFENDANT:  Yes.  Alcohol.
22             THE COURT:  All right.  And when was that?
23             THE DEFENDANT:  That's part of the anxiety treatment.
24             THE COURT:  All right.  So you are currently
25   undergoing treatment for alcoholism?
```

1          THE DEFENDANT:  Correct.

2          THE COURT:  All right.  Are you currently under the

3    influence of any drug, medication or alcoholic beverage?

4          THE DEFENDANT:  No.  Lipitor.

5          THE COURT:  Okay.  Other than that, when is the last

6    time you had any type of drug or alcoholic beverage?

7          THE DEFENDANT:  I had a beer yesterday.

8          THE COURT:  And obviously that's not affecting your

9    ability to communicate with Ms. Ross?

10          THE DEFENDANT:  Correct.

11          THE COURT:  Okay.  Do you feel like you are capable of

12    communicating with your attorney and understanding what she is

13    telling you?

14          THE DEFENDANT:  Quite clearly.

15          THE COURT:  All right.  And you understand why we are

16    here today and what's happening?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And you understand the seriousness of the

19    proceedings?

20          THE DEFENDANT:  Quite clearly.

21          THE COURT:  All right.  And on the date of the charged

22    offense, were you mentally capable of distinguishing between

23    right and wrong?

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right.  And did you --

1    THE DEFENDANT:  I hope I answered that correctly.  Ask
2  it one more time.
3    THE COURT:  Sure.  At the time of the offense that's
4  charged here in Count 7, were you mentally capable of knowing
5  the difference between right and wrong?
6    THE DEFENDANT:  Capable, yes.  I was capable.
7    THE COURT:  And did you know that it was wrong to
8  commit the offense charged in Count 7?
9    THE DEFENDANT:  Yes.
10    THE COURT:  All right.  Okay.  Ms. Ross, I know you
11  have had a lot of opportunities to meet with your client.  Are
12  you satisfied that he can effectively communicate with you?
13    MS. ROSS:  I am, Your Honor.
14    THE COURT:  And are you satisfied that he is capable
15  of understanding these proceedings and your advice?
16    MS. ROSS:  Yes, I am, Your Honor.
17    THE COURT:  And do you have any reservations with
18  respect to his competence to enter a plea?
19    MS. ROSS:  None whatsoever, Your Honor.
20    THE COURT:  Does the government?
21    MR. LAMARCA:  No indications, Your Honor.
22    THE COURT:  All right.  Thank you.  Dr. Reddix, have
23  you had a chance to read the indictment?  Those are the written
24  charges pending against you in this case.
25    THE DEFENDANT:  Yes.

1    THE COURT:  Okay.  And in particular, you read Count
2    7?
3    THE DEFENDANT:  Yes.
4    THE COURT:  All right.  And have you had a chance to
5    fully discuss those charges and any other possible charges with
6    your attorneys in this case?
7    THE DEFENDANT:  Yes.
8    THE COURT:  And you were able to ask them any
9    questions that you might have about what you are charged with
10   in that indictment?
11   THE DEFENDANT:  I have.
12   THE COURT:  And were they able to answer your
13   questions for you?
14   THE DEFENDANT:  Completely.
15   THE COURT:  All right.  And having read the indictment
16   yourself and discussed it with your attorneys, are you
17   competent that you fully understand what you have been charged
18   with in the indictment and in particular in Count 7?
19   THE DEFENDANT:  I am.
20   THE COURT:  All right.  Ms. Ross, would you agree that
21   you have had those conversations and that your client does
22   understand the charges against him in the indictment?
23   MS. ROSS:  I do, Your Honor.
24   THE COURT:  All right.  Dr. Reddix, are you satisfied
25   with the amount of time that you have had to spend with your

1    attorneys?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And are you satisfied with the amount of

4    time your attorneys have spent on your case?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And are you fully satisfied with the

7    counsel, representation and advice given to you in this case by

8    your attorneys?

9              THE DEFENDANT:  I am.

10              THE COURT:  All right.  If you have any complaints

11    about your attorneys, today is the best day to let us know.  Do

12    you have any kind of complaints we should be aware of?

13              THE DEFENDANT:  They didn't give me the information

14    that I would have liked better.

15              THE COURT:  All right.  And I know where you're going

16    with that, but when it's read in the transcript, it's going to

17    sound different.  You would like to have heard a different

18    answer.  Right?

19              THE DEFENDANT:  I would have, yes.

20              THE COURT:  But in terms of representing you, I take

21    it you are fully satisfied with both of your attorneys in this

22    case?

23              THE DEFENDANT:  I am.

24              THE COURT:  And you have no complaints about them?

25              THE DEFENDANT:  Not at all.

1        THE COURT:  All right.  My understanding is that you

2   have reached an agreement and have a plea agreement and

3   supplement with the government.  Is that correct?

4        THE DEFENDANT:  Yes.

5        THE COURT:  All right.  And did you have a chance to

6   read both of those documents before you signed them?

7        THE DEFENDANT:  Yes.

8        THE COURT:  And did you have a chance to discuss both

9   of them with your attorneys before you signed them?

10       THE DEFENDANT:  I have.

11       THE COURT:  Have you had a chance to ask your

12  attorneys any questions that you might have had about what is

13  contained in those two documents?

14       THE DEFENDANT:  They have explained them ad nauseam.

15       THE COURT:  And I take it from that that there is

16  nothing in either of those two documents that you do not

17  understand?

18       THE DEFENDANT:  That is correct.

19       THE COURT:  You fully understand the terms of both the

20  plea agreement and the supplement?

21       THE DEFENDANT:  Completely.

22       THE COURT:  All right.  And, Ms. Ross, would you agree

23  with that?

24       MS. ROSS:  Yes, Your Honor.

25       THE COURT:  All right.  So, Dr. Reddix, at this point

1  Mr. LaMarca will give us the highlights of your agreement with

2  the government.

3      MR. LAMARCA:  Your Honor, before I proceed with that,

4  I would ask the court, there was an outstanding motion with the

5  court, and I feel confident that the case law would suggest

6  that that motion becomes moot with the entry of this plea, but

7  I would like the court to address with defense the defense's

8  status with regard to that motion, whether they wish to

9  withdraw that motion before this court.

10      THE COURT:  Okay.  Thank you.  Ms. Ross?

11      MS. ROSS:  Your Honor, it is our position that the

12  motion would become moot at the time of the entry of the plea.

13  If the court wishes, we would withdraw the motion to dismiss at

14  this time.

15      THE COURT:  Okay.  I would agree with that.  The

16  motion to withdraw is accepted, and the prior motion is deemed

17  moot.

18      MR. LAMARCA:  Thank you, Your Honor.  Your Honor, the

19  defendant has agreed to plead guilty to Count 7 of the

20  indictment.  The government will make those recommendations

21  that are contained within the plea supplement that the court is

22  aware is filed under seal.

23      In addition, the agreement itself calls for the

24  defense or the defendant to waive several rights, and those

25  rights are the right to appeal the conviction or sentence or

1    the manner in which the sentence is imposed on any ground

2    whatsoever, the right to contest the conviction and sentence or

3    the manner in which the sentence was imposed in any

4    post-conviction proceeding, including but not limited to one

5    under 28 U.S.C. Section 2255, except for claims of ineffective

6    assistance of counsel; also waives any right to seek attorneys

7    fees and costs and any rights whether asserted directly or by a

8    representative to request or receive records about the case

9    under the Freedom of Information Act or the Privacy Act.

10           Those are specific waivers among other terms within

11    the plea agreement, and we ask the court to confirm that the

12    defendant does understand he has waived those particular

13    rights.

14           THE COURT:  All right.  Ms. Ross, is that consistent

15    with your understanding of the agreement?

16           MS. ROSS:  It is, Your Honor.

17           THE COURT:  And, Dr. Reddix, is it consistent with

18    yours?

19           THE DEFENDANT:  Yes.

20           THE COURT:  In particular, Mr. LaMarca mentioned

21    Paragraph 8 and its Subparts A through E in the plea agreement.

22    These are waivers or things that you are giving up.  You are

23    reserving the right to raise ineffective assistance of counsel,

24    but you waived the right to appeal the conviction and sentence

25    imposed in this case or the manner in which the sentence was

1   imposed on any grounds whatsoever and the right to contest

2   those same issues in any post-conviction proceeding, including

3   but not limited to a motion filed under Title 28 of the United

4   States Code, Section 2255.  Now, again, have you discussed all

5   of those waivers in Paragraph 8 with Ms. Ross?

6           THE DEFENDANT:  Yes.

7           THE COURT:  And do you fully understand what you are

8   giving up in those waivers?

9           THE DEFENDANT:  I do.

10          THE COURT:  And are you knowingly and voluntarily

11  agreeing to those waivers along with all of the other terms of

12  both the plea and the plea supplement?

13          THE DEFENDANT:  I am.

14          THE COURT:  Okay.  Do the terms of the plea agreement

15  and supplement represent your entire understanding with the

16  government?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Okay.  In other words, has anyone made any

19  other or different kinds of promises or assurances of any kind

20  in an effort to induce you to plead guilty in this case?

21          THE DEFENDANT:  No, but the only thing I know from the

22  government's perspective is what I have read in these two

23  documents, so I don't know everything there is to know about

24  our government.

25          THE COURT:  Right.  And that's really the point.

1    There are no side agreements or other offers that have been

2    made to you, anything other than what's reflected in that

3    agreement.

4          THE DEFENDANT:  Correct.  I just wanted to be clear on

5    your question.

6          THE COURT:  Certainly.  All right.  So do you

7    understand that the terms of the plea agreement and the

8    supplement are merely recommendations to the court and that I

9    could reject those recommendations without allowing you to

10   withdraw your plea of guilty and impose a sentence that's more

11   severe than you may anticipate?

12         THE DEFENDANT:  I understand that.

13         THE COURT:  Okay.  Mr. LaMarca, I didn't see any

14   stipulations.  Are there any?

15         MR. LAMARCA:  No, Your Honor.  No stipulations.  Just

16   recommendations.

17         THE COURT:  All right.  Thank you.  All right.  So,

18   Ms. Ross, do you have a copy of the two signed documents?

19         MS. ROSS:  Yes, Your Honor.  May I approach?

20         THE COURT:  Of course.

21    (DOCUMENTS TENDERED TO COURT)

22         THE COURT:  All right.  The plea agreement is a

23   seven-page document.  It appears to be in order.  It's fully

24   executed.  It's received in the record.

25         The plea supplement also appears to be in order.  It

too is a seven-page document.  It is fully executed, and it is received under seal.

Has anyone attempted in any way to force you to plead guilty in this case?

THE DEFENDANT:  Absolutely not.

THE COURT:  Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT:  I am.

THE COURT:  All right.  Do you understand that the offense to which you are pleading guilty is a felony offense?

THE DEFENDANT:  I do.

THE COURT:  Do you understand that if I accept the plea you will be adjudged guilty of that offense?

THE DEFENDANT:  I do.

THE COURT:  And do you understand that such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess any kind of firearm?

THE DEFENDANT:  I understand.

THE COURT:  Okay.  I also need to make sure you understand the maximum penalties provided by law.  Count 7 charges you under 18 U.S.C. Section 666 (a)(2).  Are you aware that that offense carries a term of incarceration of not more than 10 years?

1          THE DEFENDANT:  I am.

2          THE COURT:  And are you aware that it carries a fine

3     of up to $250,000?

4          THE DEFENDANT:  I am.

5          THE COURT:  And do you know that it carries a term of

6     supervised release of not more than three years?

7          THE DEFENDANT:  I understand.

8          THE COURT:  All right.  And you understand that the

9     term of supervised release is imposed in addition to any term

10     of incarceration you have received?

11          THE DEFENDANT:  Yes.

12          THE COURT:  And do you understand that while you are

13     on supervised release there are going to be rules you have to

14     follow?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you know if you break the rules you

17     could be sent back to prison?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you know if that happens you could be

20     sent back to prison for the full term of supervised release and

21     you wouldn't get any credit for any time you had already served

22     on supervised release?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Okay.  Do you understand that if

25     applicable the court could order you to pay restitution to any

1    victims of the offense?

2              THE DEFENDANT:  Sorry?

3              THE COURT:  Do you understand that if it's applicable

4    that the court could order you to pay restitution?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And do you understand the court could also

7    order you to forfeit certain property to the government?

8              THE DEFENDANT:  I do.

9              THE COURT:  Do you understand that there is a

10   mandatory special assessment of $100 per count?

11             THE DEFENDANT:  I just learned that this morning.

12             THE COURT:  Okay.  All right.  And do you understand

13   that these things I have just gone through are all possible

14   consequences of entering a plea of guilty as to Count 7?

15             THE DEFENDANT:  Yes.

16             THE COURT:  All right.  Have you had a chance to

17   discuss the sentencing guidelines with your attorneys?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Do you understand that they exist to help

20   me determine what the appropriate sentence is in your case?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And do you understand that I cannot

23   determine your guideline sentence today?

24             THE DEFENDANT:  I do.

25             THE COURT:  And do you understand that the guideline

sentence that's recommended by the probation officer could be different from any estimate that your attorneys may have given you?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that regardless of whatever estimates your attorneys may have given you that in this case the maximum sentence is 10 years and is that -- you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And it is your intent to enter a plea knowing that the sentence could be up to 10 years?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Do you also understand that the guidelines are advisory only and while I will consider them I am not required to follow them?

THE DEFENDANT:  I understand that.

THE COURT:  Okay.  So of course that means that once we determine what your guideline range is in this case, I would have the discretion to enter a sentence that's either greater or less than the sentence called for by the guidelines.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you understand that parole has been abolished so if you are sentenced to prison you will not be released on parole?

1          THE DEFENDANT:  Yes.

2          THE COURT:  I also want to ensure that you understand

3    that by entering a plea you are going to give up some rights

4    that you would otherwise have.  Do you understand that you have

5    the right to plead not guilty to any offense charged against

6    you and to persist in that plea?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that you would then have

9    the right to a trial by a jury?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Do you understand that at trial you would

12   be presumed innocent and the government would have to prove

13   your guilt beyond a reasonable doubt?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And do you understand that you would have

16   the right to the assistance of counsel for your defense at

17   trial and at every stage of the proceedings and that if

18   necessary I would appoint an attorney for you?

19         THE DEFENDANT:  I understand.

20         THE COURT:  And do you know that you would be allowed

21   to be present in the courtroom so that you could see and hear

22   all the witnesses and have them cross-examined in your defense?

23         THE DEFENDANT:  Yes.

24         THE COURT:  And do you know that you have the right on

25   your own part to decline to testify unless you voluntarily

1  elected to do so in your own defense?

2          THE DEFENDANT:  I understand that.

3          THE COURT:  Do you know that you could issue subpoenas

4  that would compel witnesses to come to trial and testify in

5  your defense?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And do you understand that should you

8  decide not to testify or put on any facts whatsoever that those

9  facts could not be used against you?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  Do you further understand that

12  by entering a plea of guilty that if I accept the plea you will

13  have waived or given up your right to a trial along with all of

14  these other rights related to trials that I just described?

15          THE DEFENDANT:  I do understand it.

16          THE COURT:  All right.  I also want to make sure you

17  understand what's called the essential elements of the offense.

18  These are the things that the government must prove before a

19  jury could return a verdict of guilty as to Count 7.

20          All right.  To return a guilty verdict as to Count 7,

21  the jury would have to be convinced that the government has

22  proven each of the following four elements beyond a reasonable

23  doubt:  First that Christopher Epps was an agent of the State

24  of Mississippi as the Commissioner of the Mississippi

25  Department of Corrections; second that the Mississippi

Department of Corrections was a state government agency that received in any one-year period benefits in excess of $10,000 under a federal program involving a grant; third that the defendant corruptly gave and agreed to give cash, a thing of value, to any person with the intent to influence and reward Christopher Epps in connection with any business of the Mississippi Department of Corrections; and fourth that the business involved anything of value of $5,000 or more.

All right. Have you discussed those elements with your counsel?

THE DEFENDANT: Yes.

THE COURT: And you understand that the government has the burden of proving all four elements beyond a reasonable doubt before a jury could find you guilty in this case?

THE DEFENDANT: I do.

THE COURT: And do you understand substantively what the government would have to prove as to each of those four counts?

THE DEFENDANT: Subsequently?

THE COURT: Substantively.

THE DEFENDANT: Oh, substantively. I'm sorry. Yes.

THE COURT: Okay. All right. Ms. Ross, would you agree you have discussed the elements and that your client does understand the essential elements of the offense?

MS. ROSS: Yes, Your Honor.

THE COURT:  All right.  Thank you.

So, Dr. Reddix, at this point Mr. LaMarca is going to tell me the facts that he would have presented to the jury had you elected to go to trial.  I'm going to ask you to listen closely to what he says because when he is finished I'm going to ask you if you agree with what he told us.  Okay.

MR. LAMARCA:  Your Honor, this factual basis that the government would prove is rather lengthy, so I ask the court for some indulgence with regard to that.

THE COURT:  Okay.

MR. LAMARCA:  From 2002 through 2014, Christopher Epps served as Commissioner of the Mississippi Department of Corrections.  The defendant, Carl Reddix, is a part owner of Health Assurance, LLC, a Mississippi Limited Liability Company. Health Assurance is in the business of providing inmate healthcare services at M.D.O.C. facilities, M.D.O.C. meaning the Mississippi Department of Correction facilities.

Health Assurance obtained a contract from M.D.O.C. to provide inmate healthcare services at Walnut Grove Correctional Facility in 2008, and the contract was renewed in 2011.

Health Assurance obtained contracts from the M.D.O.C. to provide inmate healthcare services at East Mississippi Correctional Facility and Marshall County Correctional Facility in 2012.

Health Assurance also obtained a contract to provide

inmate healthcare services at Wilkinson County Correctional
Facility in 2013.

The FBI had conducted and was conducting an
investigation into the bribery, kickbacks and money laundering
activities involving Christopher Epps; that during that
investigation the FBI obtained court-ordered Title III
authorized wiretaps allowing the FBI to intercept telephone
calls on Mr. Epps' cellphone and that the court-authorized
wiretaps extended from April 23rd of 2014 through June 21 of
2014.

As a result of conversations overheard on the wire,
agents -- I'm sorry -- the FBI surveilled Epps and Mr. Reddix
meet in the parking lot of Nick's restaurant on May 1 of 2014.
Mr. Reddix got into Epps' vehicle for a few minutes and then
both went inside Nick's restaurant for lunch.  Mr. Epps later
on June 24th of 2014, when he was confronted with the evidence
against him, admitted to agents that he was paid $8,000 by Mr.
Reddix on May 1 when they had surveilled him and again on
June 1 and that that had been occurring since approximately
2012 and that he was being paid $2,000 per month for a contract
in existence between Health Assurance and M.D.O.C.

Specifically Mr. Epps stated that Mr. Reddix had
sometime in 2012 began paying him $2,000 a month for the
contract with Walnut Grove Correctional Facility, with the East
Mississippi Correctional Facility and with Marshall County

Correctional Facility for a total of $6,000 a month.  In 2013

after Health Assurance received the contract for healthcare

services to the Wilkinson County Correctional Facility, the

defendant, Dr. Reddix, increased those payments by an

additional $2,000 a month.

Now, during the interception of the wiretap during the

two-month period, specifically on May 4th, Mr. Epps tells the

defendant, Dr. Reddix, that because he is now or soon will be

the head of two national organizations, one being the American

Correctional Association and president-elect of the Association

of State Correctional Administrators, that if the two of them

don't get something out of this, it's solely their own fault.

Specifically he states: *Carl, if we don't get something out of*

*this, it's me and your fault.*

Then on May 28th another telephone conversation

occurred between Mr. Epps and Dr. Reddix.  This is regarding

the contract for the operation of a or of the Technical

Violator Centers.  Mr. Epps reminds Dr. Reddix that the bid

package would be due tomorrow, being May 29th.  When they were

discussing the bid package, Mr. Epps asked Dr. Reddix if he put

a little extra in there.  And Dr. Reddix says he needs to make

sure that he hid it well enough.

Specifically the conversation occurred with Dr. Reddix

stating that his bid for the Technical Violation Centers,

quote: "I think it's going to be a masterpiece."  Closed quote.

Mr. Epps says:  "Sounds like you're going to have a good package, Man.  You put a little extra in there now, did you?"  And Dr. Reddix says:  "I need to make sure that we did.  We didn't hide it very well, but, yeah, shit, we always got you, you know.  That part ain't never an issue."  And Mr. Epps says:  "Okay.  "Well --

And Dr. Reddix says:  "You don't have to think about that."

Mr. Epps says:  Okay.  "I was just letting you know that if you -- if you did me like you need to."  Dr. Reddix says, among other things:  "That part ain't never had an issue.  That's one thing you don't ever have to say."

So the next day on May 29th, Mr. Epps tells Dr. Reddix by telephone call, and this is on the wire, that the TVC contracts have been taken care of for Mr. Reddix or Dr. Reddix.  Dr. Reddix says:  "That's good."  Mr. Epps tells him:  "The other two that put in were higher."

He says:  "They put in were higher than us?"  Mr. Epps says:  "Yeah, all three of them.  I mean the other two.  But between me and you, I didn't give a damn if Hargett said he could do it for $2 a day, I wasn't going to approve his.  Reddix says:  "I knew that."  Epps says:  "But you already knew that, though."

FBI agents then confronted subsequent to the wires Mr. Epps on June 24th of 2014.  So subsequent to that on July 1 of

2014, Dr. Reddix and Mr. Epps met in the parking lot of
Walker's Drive-In in Jackson where Dr. Reddix entered Mr. Epps'
vehicle and provided him with $8,500 in cash.

On August 1, they met again, this time at Highland
Village Shopping Center in Jackson, and on that occasion, Dr.
Reddix gave Mr. Epps $9,000 in cash. Again on September 2nd,
they met in the parking lot of Highland Village, and Dr. Reddix
gave Mr. Epps $9,000 in cash. And again on October 1, they met
in the same parking lot, and Mr. Epps was paid by Dr. Reddix
$9,500 in cash. And on all of those occasions, July, August,
September and October, they were all recorded, video and audio.

Finally, subsequent to that October 1 transaction, the
FBI confronted Dr. Reddix on October 30th, and at that time, he
admitted to providing kickbacks to Mr. Epps beginning about
2012 and that he further admitted to increasing those kickbacks
as Health Assurance acquired additional contracts. He did
state that he had agreed to increase the kickback to $10,000
per month after obtaining the contract for the Technical
Violation Centers in July of 2014.

At all times mentioned herein, at all times, the
Mississippi Department of Corrections had received benefits in
excess of $10,000 annually under federal programs providing
federal assistance to M.D.O.C. through the Office of Justice
Programs' Statewide Automated Victim Notification Program,
among others, and that these acts occurred in whole or in part

1    in the Southern District of Mississippi.

2            THE COURT:  All right.  Thank you.  Dr. Reddix, did

3    you hear and understand everything that Mr. LaMarca just told

4    us?

5            THE DEFENDANT:  Yes.

6            THE COURT:  And do you agree with the facts that he

7    just told us?

8            THE DEFENDANT:  I do.

9            THE COURT:  All right.  How do you now wish to plead

10   as to Count 7?  Guilty or not guilty?

11           THE DEFENDANT:  Guilty.

12           THE COURT:  All right.  It is the finding of the court

13   in the case of Carl Reddix -- United States versus Carl Reddix

14   that having viewed the defendant in court and considered his

15   demeanor and responses, the defendant is fully competent and

16   capable of entering an informed plea, that the defendant is

17   aware of the nature of the charges and the consequences of the

18   plea and that the plea of guilty is a knowing and voluntary

19   plea supported by an independent basis in fact containing each

20   of the essential elements of the offense.  The plea is,

21   therefore, accepted, and the defendant is now adjudged guilty

22   of the offense charged in Count 7.

23           All right.  Mr. LaMarca, I'm aware that this is not

24   the only case associated with Mr. Epps, and I would normally

25   set this for sentencing no earlier than August 1st, but should

I just set this as normal, or are there other factors here?

MR. LAMARCA:  There is no need to adjust the court's schedule.

THE COURT:  All right.  Counsel, let's look at August 1st, then.  That's a Tuesday.  How does that look on your calendars?

MR. LAMARCA:  No conflict here, Your Honor.

MS. ROSS:  No conflicts, Your Honor.

THE COURT:  All right.  I'm going to set it for 1:00 on August 1st.  All right.  Dr. Reddix, between now and then, the probation officer will prepare a presentence investigative report to help us determine what the appropriate sentence is in this case.  The information in that report will relate to this offense, to your personal background, other issues.  Some of the information will come directly from you; some of it will come from other sources, like the agents or employers, where you went to school.  It is obviously very important that the information you provide is accurate.  I do want to let you know that you have the right to have your attorneys present whenever you meet with the probation officers, and I would strongly encourage you to have at least one of your attorneys with you during those meetings.  The few times I have seen things get off the rails after this point are when the defendants meet with probation without their attorneys and they say something kind of stupid.  There is a reason you hired good counsel, and

1  you need to have them with you.  All right?

2          THE DEFENDANT:  Thank you.

3          THE COURT:  After that report is finished, you're

4  going to get a copy of it, and so will the government, and both

5  sides will have a chance to make objections if there is

6  anything in there that you disagree with.  A lot of times those

7  objections can get resolved, but if they can't, I will rule on

8  the objections when we come back for the sentencing hearing.

9          Also at that time you're going to have what's called a

10  right of allocution, which means that you can tell me anything

11  that you think I need to know before the sentence is imposed.

12  And you can speak for yourself or through your attorneys or

13  both.  It will be up to you.  But you will get that opportunity

14  before sentencing.

15          All right.  Mr. LaMarca, is there any reason why Dr.

16  Reddix should not remain on bond?

17          MR. LAMARCA:  No, Your Honor.

18          THE COURT:  Okay.  I'm not aware of any either.  Dr.

19  Reddix, I will allow you to remain on bond.  I do need to give

20  you the same warnings I give everybody, and the first is that

21  obviously you have got to show up for the sentencing.  It's

22  only happened a couple of times, but I can promise you the U.S.

23  Marshals are really good at what they do.  They will find you

24  and it will just get a lot worse if you don't show up.

25          Also during that time you need to continue following

1    the rules that you have been following, and they are spelled

2    out in the terms of your bond.  All right?

3              THE DEFENDANT:  Yes.

4              THE COURT:  If you were to commit another offense

5    between now and then, you would in all likelihood lose your

6    acceptance of responsibility.  When you enter a plea, in almost

7    every case you end up getting a three-point reduction in your

8    offense level which lowers your guideline range.  If you were

9    to commit another offense between now and then, under the

10   guidelines they would say that you have not really accepted

11   responsibility and you would lose that and it would increase

12   your sentence.  And I don't know anything about your personal

13   background.  I know that you told me you're going through some

14   counseling here, but if you were to get a DUI or test positive

15   or something like that, you would jeopardize your acceptance of

16   responsibility.  So you just need to be aware of that.  All

17   right?

18             THE DEFENDANT:  I am.

19             THE COURT:  Okay.  And finally, now that there has

20   been a conviction, you are no longer allowed to possess any

21   kind of firearm.  So if you own a hunting rifle or a gun for

22   protection or some people have them as collector's items, if

23   you have any guns in the house you need to get rid of them.

24   And you also need to be careful.  If you find yourself where

25   somebody gets in your car with a gun or you find yourself in a

1   car with a gun that you have access to, that can be considered

2   your gun even if you don't own it if you have access to it.

3   It's called constructive possession.  So you just need to be

4   careful to stay away from firearms from here on out.  All

5   right?

6         THE DEFENDANT:  I am.  You know, you're in somebody

7   else's car and they have got a gun in it that you don't know

8   anything about.

9         THE COURT:  If you don't know about it, you don't have

10  a problem.  But if there is a gun sitting on the console and

11  you can grab it, you have got a problem.  Mr. LaMarca, is there

12  anything else at this time?

13        MR. LAMARCA:  I don't believe so, Your Honor.

14        THE COURT:  Ms. Ross?

15        MS. ROSS:  No, Your Honor.

16        THE COURT:  All right.  We're adjourned.

17      (*Hearing was concluded.*)

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF REPORTER

 2

 3         I, BRENDA D. WOLVERTON, Official Court Reporter,

 4    United States District Court, Southern District of

 5    Mississippi, do hereby certify that the above and foregoing

 6    pages contain a full, true and correct transcript of the

 7    proceedings had in the aforenamed case at the time and

 8    place indicated, which proceedings were recorded by me to

 9    the best of my skill and ability.

10         I certify that the transcript fees and format

11    comply with those prescribed by the Court and Judicial

12    Conference of the United States.

13         This the 5th day of May, 2017.

14

15                              s/ Brenda D. Wolverton_____
                                BRENDA D. WOLVERTON, RPR-CRR
16

17

18

19

20

21

22

23

24

25
```